**Jane Lynn DOLKART, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–05–00934–CR.**

Court of Appeals of Texas,
Dallas.

July 26, 2006.

Michael P. Gibson, Burleson Pate & Gibson, LLP, Gary A. Udashen, Dallas, for appellant.

William T. (Bill) Hill, Jr., Criminal District Attorney, Karen R. Wise, Assistant District Attorney, Dallas, for state.

Before Justices WRIGHT, LANG–MIERS, and MAZZANT.

## OPINION

Opinion by Justice WRIGHT.

Jane Lynn Dolkart appeals her conviction for aggravated assault. After the jury found her guilty, it assessed punishment at two years' confinement, probated for five years, and a $1000 fine. In eight issues, appellant contends: (1) the evidence is legally and factually insufficient to support her conviction; (2) her right to a unanimous verdict was violated under both the United States and Texas Constitutions; (3) the trial court erred by allowing certain expert witness testimony; (4) the trial court erred by precluding defense counsel from questioning appellant about her criminal history; (5) the trial court erred by allowing the State to amend its indictment; and (6) the cumulative harm of these errors denied appellant a fair trial. We conclude the evidence is legally sufficient to support appellant's conviction but agree with appellant that the jury charge violated her right to a unanimous verdict. Thus, we reverse the trial court's judgment and remand for further proceedings.

## Background

Tom Thomas, II testified that he was scheduled to meet some friends at White Rock Lake for a bicycle ride. Thomas and Paul Schoenberg were the first of the group to arrive. While waiting for the others, Thomas and Schoenberg decided to go for a short ride and warm up their legs. As they were riding their bicycles down the street, Thomas heard a "loud horn blast right behind me." Thomas turned and saw appellant driving a green sedan about three or four feet behind him. She was so close it made him "very" uncomfortable. As Thomas looked at her, she raised her hand and shook it. Thomas interpreted appellant's gesture to mean that appellant did not "like the fact that [he] was on a bike on [her] street." Thomas and Schoenberg kept cycling, hoping appellant would go around them. Although there was plenty of room for appellant to pass on the right, she did not do so. Instead, appellant followed them, "screaming at us through the car." When Thomas and Schoenberg reached the end of the median in the street, they made a U-turn. Appellant also made a U-turn and stayed about three or four feet behind them. Thomas slowed to a "rolling stop" to allow appellant to pass. As Thomas did so, appellant "went into a rage," screaming "extremely nasty and extremely loud" and then Thomas heard her "hit the accelerator." The next thing Thomas knew, he "slammed down to the ground under her bumper." Thomas's feet were locked onto the pedals, so he put both his hands onto the bumper and held himself up from the concrete. Appellant's car pushed him along with his bicycle for three feet, leaving a gouge in the street. After the car stopped, appellant backed the car off of Thomas's bicycle and stared at Thomas. Eventually she rolled down her window. When Thomas told appellant not to leave because he was calling 911, she told him, "Oh, I didn't even hit you," and drove away. Schoenberg testified to substantially the same version of the incident, although he described appellant as following from "ten feet or so" behind them.

While Thomas was calling 911, a police car drove by and he flagged it down. Thomas and Schoenberg told the police what had happened. As they were doing so, a man walked up and told the police he had the license number of appellant's car and had seen appellant drive into a nearby parking lot. The officers found appellant's car and were verifying the license number when appellant walked up and said, "I believe you are looking for me." Officer Craig Bennight asked appellant about the incident and she "unleashed a torrent of . . . anger." Appellant told Bennight that Thomas was intentionally blocking her and would not allow her to pass. Appellant became angry whenever they talked about the incident. When Bennight told appellant that Thomas said she intentionally hit him, appellant claimed that was "absurd" and said, "I only meant to tap him." Appellant was then arrested.

Later that afternoon, Thomas went to a Primacare near his home because his shoulder was hurting and he was concerned it had been broken when he fell. The wait was long, so Thomas made an appointment for the next day. At that time, Dr. Joseph Park x-rayed Thomas's shoulder and determined it was not broken. Park diagnosed Thomas with contusions and abrasions of the left shoulder and elbow, gave him a sling to immobilize his shoulder, and prescribed pain medicine.

Appellant's version of the incident is considerably different. Appellant testified that she also was on her way to meet friends for a bicycle ride around White Rock Lake. Thomas and Schoenberg were riding bicycles next to each other, talking. They were going so slowly appellant stopped her car. Thinking the men had not seen her, she tapped her horn. They continued at the same pace so she waited until they had gone a sufficient distance and "very, very slowly followed them." Appellant was not sure how far she was

from the cyclists, but it was a "reasonable" distance. Appellant explained that she did not go around them because there was not room to pass them and still make her turn at the median. Appellant denied being angry, yelling, or making gestures at the men. After she followed the men around the median, Thomas slowed his speed and then came to a stop in front of her. Appellant did not realize Thomas was stopping at first, but once she did she "slammed on the brake" and "bumped his back tire." Appellant explained that she did not get out of the car to check on him because she was "upset" and "scared." Thomas looked fine, so she drove a short way to the parking lot where she was to meet her friends. The police came almost immediately. According to appellant, she was upset and a little angry when she spoke with the police because she "felt as though Mr. Thomas had precipitated the accident." Appellant admitted that she was "somewhat agitated" and "upset" but claimed she did not tell the police that she intended to "tap" Thomas's back tire.

After hearing this and other evidence, the jury found appellant guilty of aggravated assault with a deadly weapon. This appeal followed.

### Legal Sufficiency

■ Because a determination that the evidence is legally insufficient would result in an acquittal, we begin with appellant's third issue. Under this point, appellant contends we must render such a verdict because the State failed to show (1) she intended to threaten or injure Thomas, (2) her actions were reckless, and (3) her car was a deadly weapon. After reviewing the record, we cannot agree.

■ When reviewing a legal sufficiency challenge, we view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact

could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). To support appellant's conviction in this case, the State was required to prove beyond a reasonable doubt that appellant (1) intentionally or knowingly threatened Thomas with imminent bodily injury and used or exhibited a deadly weapon during the commission of the assault or (2) intentionally, knowingly, or recklessly caused Thomas bodily injury and used or exhibited a deadly weapon during the commission of the offense. *See* TEX. PEN.CODE ANN. §§ 22.01, 22.02 (Vernon Supp.2005). To obtain a deadly weapon finding in this case, the State had to show that appellant operated her car during the commission of the offense in a manner capable of causing death or serious bodily injury. *See* TEX. PEN. CODE ANN. § 1.07(a)(17)(B) (Vernon Supp. 2005).

Viewed in the light most favorable to the verdict, the evidence shows that appellant became angry and agitated with Thomas for blocking her way. She followed behind him for some period of time at an unsafe distance, making Thomas very "uncomfortable" and "concerned." After Thomas made a U-turn and came to a stop, appellant began screaming at him, accelerated her car, hit his rear tire, and knocked him to the ground. When Thomas fell, appellant's car pushed him and the bicycle along the street for a few feet, leaving a gouge in the concrete. Appellant told the police that Thomas provoked the incident by intentionally blocking her way, and claimed she only "meant to tap him." When he fell, Thomas injured his left shoulder and elbow.

From this evidence, a rational jury could find appellant (1) intentionally or knowingly threatened Thomas with imminent bodily injury; (2) intentionally, knowingly, or recklessly caused Thomas bodily injury;

and (3) used her car in a manner capable of causing death or serious bodily injury. *See* TEX. TRANSP. CODE ANN. § 545.401(a) (Vernon 1999) (person commits offense of reckless driving by driving vehicle in willful or wanton disregard for safety of persons or property); *Cleburn v. State*, 138 S.W.3d 542, 545 (Tex.App.-Houston [14th Dist.] 2004, pet. ref'd) (appellant acted recklessly by using pick-up truck to move small Toyota Tercel with visible car seat and adult occupants); *Noyola v. State*, 25 S.W.3d 18, 20 (Tex.App.-El Paso 1999, no pet.) (appellant used vehicle in manner capable of causing death or bodily injury by accelerating vehicle in reverse, dragging complainant behind him); *Green v. State*, 831 S.W.2d 89, 93 (Tex.App.-Corpus Christi 1992, no pet.) (appellant's sudden acceleration toward complainant in open parking lot forcing him to run inside store sufficient to show appellant intentionally threatened complainant with imminent bodily injury by use of motor vehicle). Thus, we conclude the evidence is legally sufficient to support appellant's conviction. We overrule appellant's third issue.

### Unanimous Verdict

■ In her first issue, appellant contends her right to a unanimous verdict was violated. Appellant maintains she was charged in a two-paragraph indictment with two separate offenses—aggravated assault by threat and aggravated assault causing bodily injury—and because the jury was charged in the disjunctive, appellant is not ensured that the jury unanimously agreed that appellant committed an illegal act. After reviewing the record and the applicable law, we agree with appellant.

The trial court's charge stated:

Now, if you find from the evidence beyond a reasonable doubt that on or about the 2nd day of May, 2004, in Dal-

las County, Texas, the defendant, JANE LYNN DOLKART, did unlawfully then and there intentionally or knowingly threaten TOMMY THOMAS, hereinafter called complainant, with imminent bodily injury, to-wit: by operating a motor vehicle on a roadway on which said complainant was then and there operating a bicycle and causing the said motor vehicle to strike with or against said bicycle, causing said complainant to strike against the ground, and said defendant did use or exhibit a deadly weapon, to-wit: a motor vehicle, during the commission of the assault

OR

if you find from the evidence beyond a reasonable doubt that the defendant, JANE LYNN DOLKART, did unlawfully then and there intentionally, knowingly or recklessly cause bodily injury to TOMMY THOMAS, hereinafter called complainant, to-wit: by operating or driving a motor vehicle, a deadly weapon, on a roadway at a distance from a bicycle operated then and there by said complainant which was unsafe under the existing circumstances, or by failing to take proper evasive action to avoid striking a bicycle, thereby causing said motor vehicle to strike or collide with the bicycle operated by said complainant, and thereby causing said complainant to strike against the ground, and said defendant did use or exhibit a deadly weapon, to-wit: a motor vehicle, during the commission of the assault, then you will find the defendant guilty of aggravated assault as charged in the indictment.

The trial court also charged the jury on the lesser included offenses of deadly conduct, assault, and reckless driving.

The Texas Constitution guarantees a criminal defendant the right to a unanimous jury verdict in felony cases. Tex. Const. art. V, § 13; *Ngo v. State*, 175 S.W.3d 738, 745 (Tex.Crim.App.2005). A unanimous verdict ensures that each juror is convinced beyond a reasonable doubt that the prosecution has proved each essential element of the offense. *Jefferson v. State*, 189 S.W.3d 305, 311 (Tex.Crim.App. 2006). When the statute in question establishes different modes or means by which the offense may be committed, unanimity is generally not required on the alternate means of commission. *Id.* But, when the indictment alleges in a single count two separate offenses arising under the same penal code provision, the jury must agree on which offense it finds the defendant committed. *See id.*

Recently, in *Jefferson*, the court of criminal appeals explained that the first step in a unanimity challenge is an examination of the statute to determine the legislature's intent. *See id.* We begin our analysis then, by determining whether the legislature intended section 22.01(a) to create multiple, separate offenses, or a single offense capable of being committed in different ways. *See id.* In making this determination, we must decide whether the legislature intended to make assault by threat and assault by injury separate offenses, or underlying "brute facts [or means that] make up a particular element." *See id.* at 312 (citing *Richardson v. United States*, 526 U.S. 813, 817–18, 119 S.Ct. 1707, 143 L.Ed.2d 985 (1999)).

Section 22.02 provides that a person commits aggravated assault if the person commits assault as defined in section 22.01 and the person either causes serious bodily injury to another or uses or exhibits a deadly weapon during the assault. *See* Tex. Pen.Code Ann. § 22.02(a). Section 22.01(a) provides a person commits assault if the person (1) intentionally, knowingly, or recklessly causes bodily injury to another, or (2) intentionally or knowingly threat-

ens another with imminent bodily injury. *See* Tex. Pen.Code Ann. § 22.01(a).

█ Bodily injury assault is a "result of conduct" offense that can be committed intentionally, knowingly, or recklessly. *Marinos v. State,* 186 S.W.3d 167, 174 (Tex.App.-Austin 2006, pet. filed) (citing *Fuller v. State,* 819 S.W.2d 254, 255–56 (Tex.App.-Austin 1991, pet. ref'd)). The essential focus of a result of conduct statute is to punish the defendant for causing a specified result, here causing bodily injury. *See Jefferson,* 189 S.W.3d at 312; *Alvarado v. State,* 704 S.W.2d 36, 38–39 (Tex. Crim.App.1985). In contrast, assault by threat is a "nature of conduct" offense that can only be committed intentionally or knowingly. *Marinos,* 186 S.W.3d at 174. (citing *Guzman v. State,* 988 S.W.2d 884, 887 (Tex.App.-Corpus Christi 1999, no pet.)). The focus of a nature of conduct statute is the intent to punish a specified conduct, here threatening others. *See Alvarado,* 704 S.W.2d at 38–39. Assault by threat requires only fear of imminent bodily injury and does not require a finding of actual bodily injury. Thus, assault by threat and assault by injury differ in the conduct element, the culpability element, and the required result.[1] Therefore, we cannot conclude that assault by threat and assault by injury are merely underlying "brute facts" or means that make up a particular element of a single assault. Rather, we conclude that the legislature created separate offenses. *See Gonzales v. State,* 191 S.W.3d 741, 748–50 (Tex.App.-Waco 2006, no pet. h.); *Marinos,* 186 S.W.3d at 174.

We find support for this conclusion in the fact that the different types of conduct proscribed by section 22.01(a) are found in different subsections, and are separated by "or," which is some indication that any one

of the proscribed conduct provisions constitutes an offense. *See Vick v. State,* 991 S.W.2d 830, 832–33 (Tex.Crim.App.1999). Further, the focus of the two subsections is different: one is intended to punish the defendant for causing bodily injury; the other is intended to punish a defendant for engaging in threatening behavior. Finally, we find support for this determination because the legislature assigned different punishment ranges to the two offenses. *See* Tex. Pen.Code Ann. § 22.01(b), (c). Unless committed against certain people, bodily injury assault is a Class A misdemeanor punishable by confinement in jail, while assault by threat is a Class C misdemeanor punishable by a fine only. *See* Tex. Pen.Code Ann. §§ 12.21, 12.23, 22.01(b), (c) (Vernon 2003 & Supp.2005).

█ After reviewing the language of the statute and applicable law, we conclude assault by threat and assault by injury are different statutory offenses, not just two manner and means of committing a single offense of aggravated assault. *See Gonzales,* 191 S.W.3d 741, 748–50; *Marinos,* 186 S.W.3d at 175. Consequently, even though the State sought only a single aggravated assault conviction, the trial court's charge allowed the jury to convict appellant without requiring the jury to unanimously agree on whether appellant committed aggravated bodily injury assault or aggravated assault by threat. Therefore, we conclude the charge was erroneous.

█ Because appellant did not object to the jury charge, we now turn to the question of whether appellant suffered egregious harm as a result of the error. *Ngo,* 175 S.W.3d at 749; *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1985) (op. on reh'g). Under the *Almanza* stan-

---

1. The elements of a criminal offense are (1) the forbidden conduct; (2) the required culpability; (3) any required result; and (4) the negation of any exception to the offense. Tex. Pen.Code Ann. § 1.07(a)(22).

dard, the record must show that a defendant has suffered actual, rather than merely theoretical, harm from jury charge error. *Ngo*, 175 S.W.3d at 750. Errors that result in egregious harm are those that affect "the very basis of the case, deprive the defendant of a valuable right, or vitally affect a defensive theory." *Id.* When determining whether appellant suffered egregious harm, we consider the record as a whole, including the entire jury charge, the contested issues and weight of the probative evidence, and the arguments of counsel. *Almanza*, 686 S.W.2d at 171.

■■■ We begin our harm analysis by noting that, like the jury charge in *Ngo*, this is not a case in which the jury charge is simply missing an important word—"unanimously." As in *Ngo*, the State told the jury in closing argument that it did not have to agree whether appellant committed assault by threat or bodily injury assault. Further, the evidence in this case was contested. Appellant testified and denied the offenses. She claimed she did not intend to hit Thomas but rather it was an accident. Some jurors could have believed appellant and determined that she did not intend to threaten or injure Thomas, but concluded her conduct in driving so close to Thomas was reckless and resulted in his injury. Other jurors could have disbelieved appellant and determined that she intentionally and knowingly followed Thomas too closely to threaten him, resulting only in his fear of imminent bodily injury. *See Saxton v. State*, 804 S.W.2d 910, 914 (Tex.Crim.App.1991) (fact finder is free to accept or reject any or all of witness's testimony). Finally, the record reflects the jury had some confusion regarding the unanimity requirement as evidenced by the note it sent out asking, "Does an acquittal of a charge need to be unanimous in order to proceed to a lesser (next charge)?" In response, the trial court instructed the jury to refer to the charge—a charge that does not contain a

unanimity instruction with regard to the two aggravated assault offenses. While we do not know the source of the jury's confusion, the charge itself did not require a unanimous verdict as to one or the other of the aggravated assault offenses, and the jury could have quite reasonably returned a non-unanimous verdict.

After reviewing the record in this case, we cannot conclude the jury returned a unanimous verdict. In fact, the record shows the jury was confused about unanimity. In light of this record, we conclude appellant suffered egregious harm. *See Ngo*, 175 S.W.3d at 752. We sustain appellant's first issue.

Due to our disposition of appellant's first issue, we need not address appellant's remaining issues. TEX.R.APP. P. 47.1

We reverse the trial court's judgment and remand for further proceedings.