Opinion filed February 22, 2007
















 
 
  
 
 







 
 
  
 
 




Opinion filed February 22, 2007

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                   __________

 

                                                          No. 11-05-00017-CR 

                                                    __________

 

                                 FRANK LEE GREEN, JR., Appellant

 

                                                             V.

 

                                        STATE
OF TEXAS,
Appellee

 



 

                                         On
Appeal from the 339th District Court

 

                                                          Harris County,
Texas

 

                                                   Trial
Court Cause No. 977617

 



 

                                                                   O
P I N I O N

 

The jury convicted Frank Lee Green, Jr. of the aggravated assault
of Jermaine Anthony Williams, a family member; and the trial court sentenced
him to two years confinement.  We affirm.

                                                             I.  Background Facts








Green and Sandra Elaine Green were in the midst of
a divorce.  She had moved out of the
house but had not yet removed all of her belongings.  She and her two adult sons from a previous
marriage, Jermaine and Rickey Williams, arrived at Green=s
house one night to remove her remaining belongings.  Green let them in the house and moved a
vehicle so that Jermaine and Rickey could park a U-Haul vehicle in his
driveway.

Sandra, Jermaine, and Rickey went into a bedroom
and began packing.  Green followed them
to ask Sandra how long it would take to finish moving.  Either while he was in the bedroom or as he
was leaving, Green and Jermaine bumped into one another or otherwise came into
physical contact, and words were exchanged. 
Green went outside and called the police on his cell phone.  He then went back inside the house and told
Jermaine and Rickey to leave.  While
inside, he noticed that his motorcycle had been kicked over and dented.  He then went into his garage to get a BB gun.
    Green wanted Jermaine and Rickey to
think his BB gun was a larger gun, so he pumped it over 30 times to cause it to
make a louder noise.  He walked outside and
fired the gun at them Ato
get their attention.@  Jermaine and Rickey continued carrying Sandra=s belongings to the U-Haul.  Green went inside the house and pointed the
gun at his stepsons to scare them. 
Jermaine saw Green come inside the house with a bolt-action rifle.  When Green pointed it at his head, Jermaine
reached for the rifle, and Green struck him on the side of the face with the
rifle=s
stock.  Green admitted to striking
Jermaine but testified that he did so only after Jermaine ran at him.

After Green hit him, Jermaine smashed a mirror
inside the house, and Rickey threw a brick through the front door window.  The police arrived and restored order.  They recovered a .22 bullet that fell from
Green=s waistband
as he was being patted down, a single-shot .22 rifle in the front yard of an
adjacent house, and a second bullet from it. 
No BB gun was ever recovered.  

Jermaine testified that he initially thought Green
had broken his jaw.  He felt constant
throbbing, and his ears rang.  He could
not eat for three days, and he missed three days of work because of his
injury.  

                                                                       II.  Issues

Green challenges his conviction with two
issues.  First, Green argues that the
trial court erroneously failed to require a unanimous verdict and, second, that
the evidence was factually insufficient to support the jury=s rejection of his defense-of-property
defense.

                            III.  Did the trial Court Commit Egregious Error
by Submitting 

                                 a Charge that Did Not
Require a Unanimous Verdict?

 








The indictment alleged in two paragraphs that
Green committed aggravated assault against Jermaine.  The first paragraph alleged that Green
intentionally and knowingly threatened Jermaine with imminent bodily injury by
exhibiting and using a firearm.  The
second alleged that Green inflicted bodily injury on Jermaine by using a
firearm.   The trial court=s charge did not require the jury to
unanimously agree on either allegation but allowed them to return a guilty
verdict so long as all twelve members believed that Green had done at least one
of the alleged acts.  The State concedes
that this was erroneous but contends that it was not harmful.

A. 
Standard of Review.

Green did not object to the court=s charge.  He must, therefore, establish that the
erroneous charge caused him to suffer egregious harm that prevented him from
receiving a fair and impartial trial.  Jimenez
v. State, 32 S.W.3d 233, 237-38 (Tex.
Crim. App. 2000).  We base our harm
determination on a review of the record as a whole, including the entire jury
charge, the contested issues and weight of the probative evidence, and the
arguments of counsel.  Almanza v.
State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985).  The harm to Green must be actual and not just
theoretical.  Id. at 174.

            B.  Analysis.

Causing bodily injury to a family member and
threatening a family member with bodily injury are separately defined statutory
criminal acts.  See Marinos v. State,
186 S.W.3d 167, 174-75 (Tex. App.CAustin
2006, pet. filed).  Unfortunately, the
trial began with the trial court incorrectly instructing the jury panel during
voire dire that Green was accused of committing one offense by using two
different means and manner.  The trial
ended with the prosecution arguing that six jurors could believe that Green
threatened Jermaine with a deadly weapon and the other six could believe that
he caused bodily injury with a deadly weapon. 
The jury, therefore, was incorrectly led to believe that Green had been
accused of one, rather than two, criminal acts.








Courts have found that similar errors caused egregious
harm and required a new trial.  See,
e.g., Ngo v. State, 175 S.W.3d 738 (Tex. Crim. App. 2005); Hutch v.
State, 922 S.W.2d 166 (Tex. Crim. App. 1996).  In each instance, the error directly impacted
the jury=s determination
of a contested issue.  In Ngo, the
defendant was charged with mutually exclusive allegations: stealing a credit
card and receiving a stolen credit card. 
The charge, however, did not require a unanimous determination of either
allegation.  175 S.W.3d at 751.  In Hutch, the primary issue was the
legality of the police=s
decision to stop the defendant=s
vehicle.  The charge mistakenly
instructed the jury that, if the defendant and his passenger were not
wearing their seatbelts, then the stop was illegal.  922 S.W.2d at 169.  Consequently, in Ngo, the defendant
could have been convicted even though the jury split on which of the mutually
exclusive acts he took; and, in Hutch, the defendant could have only
been convicted if the jury determined that the evidence was illegally obtained.

Conversely, when similar errors have not impacted
the jury=s
determination of a contested issue, courts have found no egregious harm.  See, e.g., De Los Santos v.
State, No. 04-05-00694-CR, 2006 WL 3369963 (Tex. App.CSan Antonio Nov. 22, 2006, no pet. h.);
Valdez v. State, No. 11-05-00046-CR, 2006 WL 2075144 (Tex. App.CEastland July 27, 2006, no pet.);
Martinez v. State, No. 03-05-00345-CR, 2006 WL 1559228 (Tex. App.CAustin June 9, 2006, pet. ref=d); Marinos, 186 S.W.3d at
176-77.  Typically, these have involved
situations such as was present in Valdez,
2006 WL 2075144 at *7-8, where this court found that there was only one
disputed issue and, thus, that the jury=s
verdict necessarily indicated that it was unanimously resolved against the
defendant.

In a similar case, a sister court concluded that
not requiring a unanimous verdict when the defendant was charged with
aggravated bodily injury assault and aggravated assault by threat created
egregious harm.  See Dolkart v. State,
197 S.W.3d 887 (Tex. App.CDallas
2006, pet. ref=d). In Dolkart,
the defendant drove her car closely behind two bike riders before knocking one
down.  The trial court, without
objection, submitted threat and assault allegations in the disjunctive and did
not require the jury to reach a unanimous verdict on either allegation.  The trial court also charged the jury on the
lesser included offenses of deadly conduct, assault, and reckless driving.           








In Dolkart, the record indicated that the
jury was confused about the law.  During
their deliberations, the jury sent out a note asking, “Does an acquittal of a
charge need to be unanimous in order to proceed to a lesser (next charge)?”  The trial court instructed the jury to refer
to the charge B which
unfortunately was incorrectly worded.  Id. at 894.  The defendant had testified that she did not
intend to injure the biker but that it was an accident.  The court noted that the jury could have
believed her but determined that she was acting recklessly, which would support
a conviction for bodily injury assault, or that the jury could have disbelieved
her, determined that she had intentionally and knowingly followed the bikers
too closely so as to threaten them, and thus convicted her of assault by
threat.  Because the jury was confused
and because it was impossible to ascertain what the jury ultimately determined,
the court found egregious harm and reversed the defendant=s conviction.

This case does not contain the same ambiguity.  There was no dispute that Green threatened,
shot at, and then struck Jermaine with at least a BB gun.  Green=s
own testimony establishes each of the elements of assault by threat and assault
by bodily injury.  The dispute was
whether Green=s actions
were justified.  The jury=s verdict necessarily reveals that it
determined they were not.  

Green contended that his actions were justified because
they were in response to Jermaine and Rickey=s
threats and damage to his property and because he was merely trying to get them
to leave his house.  Green testified that
Jermaine had threatened to kill him before and that Jermaine initiated the
conflict by shoving him and telling him to “move your bitch ass out of my way.”  Shortly thereafter, Green noticed that his
motorcycle had been kicked over and dented. 
He told Jermaine and Rickey that they needed to leave.  When they refused, Green went to his garage
and got a BB gun.  Green wanted them to
think that it was something besides a BB gun, so he pumped it well beyond the
manufacturer=s
instructions.  He admitted to pointing it
at them and to firing it at least once. 
When they still did not leave, he hit Jermaine with the gun.  Green also admitted getting a .22 rifle out
of his garage.  He denied loading it or
pointing it at his stepsons but agreed that he had .22 bullets on him when the
police arrived.  He testified that he was
using the .22 bullets to scare his stepsons.

Green=s
own testimony, thus, establishes that he did both of the charged acts.   During closing argument, Green=s counsel did not dispute that Green
had threatened his stepsons and hit Jermaine, but he told the jury:

[Y]ou
have to take all this varied testimony and put it through Mr. Green=s viewpoint at that time to decide
whether or not his actions were reasonable or unreasonable at that time and
whether or not he=s guilty
of the offense charged.  

 

. . . .

 

So under the right circumstances you could
reasonably believe that this guy is going to rip up your house or do something
else that may necessitate deadly force in order to stop his behavior.  That=s
something only you as the jury can decide. 

 

. . . .

 








So the destruction of the property had already
begun and Mr. Green called the police but the police didn=t come. 
And remember what we=re
talking about here is self help.

 

. . . .

 

Now, I would submit to you today that even if you
believed that it was a .22 involved, that that [sic] deadly force was
justified.  

 

. . . .

 

And you heard Mr. Green testify.  Why did you get the bullets?  Why did you show him the bullets?  Because he wanted to make them think that he
had a .22, but he hadn=t
gotten one yet. . . . [T]he only way to get those people out was to make them
think that he was approaching them with deadly force and then at some point he
actually went to go get the .22.

 

Because Green=s
defense was predicated on his admission that he threatened and struck Jermaine,
the failure to require a unanimous verdict did not result in egregious
harm.  The only issue was whether Green=s actions were justified.  The jury=s
verdict indicates that it unanimously concluded they were not.  Green=s
first issue is overruled.    

             IV. Was the Evidence
Factually Sufficient to Support the Verdict?

Green contended at trial that he was justified in
using force or deadly force against Jermaine to protect his property and
contends on appeal that the evidence should have raised a reasonable doubt
concerning his guilt in the minds of the jurors.  The State answers that the evidence was
factually sufficient to support Green=s
conviction.

A.  Standard of Review.








To determine if the evidence is factually
sufficient, the appellate court reviews all of the evidence in a neutral
light.  Watson v. State, 204
S.W.3d 404, 414 (Tex. Crim. App. 2006) (overruling in part Zuniga v. State,
144 S.W.3d 477 (Tex. Crim. App. 2004)); Johnson v. State, 23 S.W.3d 1,
10-11 (Tex. Crim. App. 2000); Cain v. State, 958 S.W.2d 404, 407-08
(Tex. Crim. App. 1997); Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim.
App. 1996).  Then, the reviewing court
determines whether the evidence supporting the verdict is so weak that the
verdict is clearly wrong and manifestly unjust or whether the verdict is
against the great weight and preponderance of the conflicting evidence.  Watson, 204 S.W.3d at 414-415;  Johnson, 23 S.W.3d at 10-11.  The jury, as the finder of fact, is the sole
judge of the weight and credibility of the witnesses=
testimony.  Tex. Code Crim. Proc.
Ann. art. 36.13 (Vernon 1981), art. 38.04 (Vernon 1979). 
This court has the authority to disagree with the fact-finder=s determination Aonly
when the record clearly indicates such a step is necessary to arrest the
occurrence of a manifest injustice.@  Johnson, 23 S.W.3d at 9.

B. 
Analysis.

Texas
law allows an actor to use force against another to protect an actor=s own property when the actor
reasonably believes that the force is immediately necessary to prevent or
terminate the other=s
trespass or unlawful interference with the actor=s
property.  Tex. Pen. Code Ann. '
9.41 (Vernon 2003).  Deadly force can be
used to protect property when and to the degree the actor reasonably believes
is immediately necessary to prevent the imminent commission of arson, burglary,
robbery, aggravated robbery, theft during the nighttime, or criminal mischief
during the nighttime and when the property cannot be protected by any other
means, or the use of force other than deadly force would expose the actor or
another to a substantial risk of death or serious bodily injury.  Tex.
Pen. Code Ann. '
9.42 (Vernon 2003).

There is no dispute that a verbal altercation
broke out between Green and his stepsons, that there was some physical contact
between Green and Jermaine, that Green threatened Jermaine and Rickey with at
least a BB gun while attempting to make them believe it was actually a .22,
that he shot at them with the gun, that he struck Jermaine with the gun, and
that Jermaine and Rickey caused damage to Green=s
house and property.  The witnesses
disputed who was the aggressor and disagreed on the sequence of the events, but
Green argues that, when the evidence is viewed in a neutral light, the jury=s determination that he did not have a
reasonable belief that his actions were necessary to prevent property damage is
unjustified.

The reasonableness and necessity of Green=s actions were strenuously
contested.  Green contends that he had a
reasonable belief that Jermaine was likely to damage his property because Green
and Sandra were in the middle of divorce proceedings; because he and Jermaine
did not like each other; and because, after Jermaine nudged Green, Jermaine
used aggressive language. 








Green described Jermaine as the aggressor.  He testified that he asked his stepsons to
leave  and that he got his BB gun only
after learning that they had damaged his motorcycle.  Green=s
niece, Kissie Wallace Elaine Thompson, testified that heard Jermaine cuss Green
and that Jermaine picked up a cane and started following Green and swinging the
cane at him.  She also testified that
Jermaine, Rickey, and Sandra began damaging Green=s
property before he got a gun.  As noted
previously, Green contended that his actions with the BB gun and the .22
bullets were strictly to scare his stepsons so that they would leave his house.

Sandra and Jermaine disputed Green=s testimony.  Both testified that Jermaine was not the
aggressor but was simply trying to move her furniture to the U-Haul.  Jermaine testified that the physical contact
in the bedroom was unintentional and that, after that, Green Aflew off of the handle@ and threatened him.  Jermaine denied threatening Green or
exchanging any words with him.  Jermaine
testified that he thought the weapon Green used to shoot at them was probably a
pellet gun.  But, the weapon Green
pointed at his forehead and struck him with was a .22.  Furthermore, the police recovered a .22 and
.22 bullets but not a BB gun. 

The jury was responsible for resolving the
conflicts in the evidence and, from this evidence, could have rationally
determined that either no force was necessary because Green was the aggressor
or, alternatively, that Green went beyond the amount of force reasonably
necessary to protect his property.  The
evidence is factually sufficient to support the verdict, and his second issue
is overruled. 

                                                                     V.  Holding

The judgment of the trial court is affirmed.

 

 

RICK STRANGE

JUSTICE

 

February 22, 2007

Do not publish.  See
Tex. R. App. P. 47.2(b).

Panel
consists of: Wright, C.J.,

McCall,
J., and Strange, J.