NO. 07-07-0029-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

FEBRUARY 14, 2008
______________________________

FRANK CHACON, 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellant

v.

THE STATE OF TEXAS, 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellee
_________________________________

FROM THE 47TH DISTRICT COURT OF RANDALL COUNTY;

NO. 17,290-A; HON. HAL MINER, PRESIDING
_______________________________

Memorandum Opinion
_______________________________

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.
Â Â Â Â Â Â Â Â Â Â Frank Chacon was convicted of murder. He appeals that conviction by contending
1) he was improperly convicted by accomplice witness testimony for which there was no
corroboration, and 2) the evidence was legally and factually insufficient to sustain the
verdict. We disagree and affirm the judgment. 
Â Â Â Â Â Â Â Â Â Â Background
Â Â Â Â Â Â Â Â Â Â Appellant was part of a drug selling operation in Amarillo which operation was
headed by Craig Kimberlin. Other members of that operation included Josh Stocker, Josh
Bledsoe, Destry Keeling, and Michael Elliston. In 2002 and 2003, Kimberlinâs group was
experiencing problems created by Dustin Pool, the head of a rival drug operation. Pool
was believed to have been the informant for a police raid that was conducted at Kimberlinâs
house and was threatening Bledsoe who was the drug supplier for Kimberlinâs group. At
a meeting at Stumpyâs lounge in February 2003, Bledsoe suggested that he could hire
someone to kill Pool for $10,000.


 Another meeting concerning the Pool problem also took
place at Kimberlinâs residence. Thereafter, on March 9, 2003, Stocker, on his own
initiative, requested that a woman, Tori Patrick, lure Pool to her apartment. When Pool
arrived in the early morning hours of March 10, Stocker and his brother attacked Pool with
a fireplace poker. Stocker then called Kimberlin and told him he had Pool. 
Â Â Â Â Â Â Â Â Â Â Kimberlin arrived at the apartment and called Elliston, who owned a place in the
country referred to as âthe farm.â Kimberlin asked Elliston to bring a box to the apartment
that was big enough to hold a body. When Elliston arrived, Pool was placed in a
refrigerator box and transported to Ellistonâs farm where he was taken to the second floor
of Ellistonâs workshop. Stocker beat Pool during the course of the afternoon. Later,
appellant, Kimberlin, and Bledsoe arrived. Over a number of hours, Pool was beaten,
tortured, and had a sock stuffed in his mouth and his face duct taped. It is believed that
he died sometime in the early morning of March 11 from blunt force trauma to the head
and/or asphyxiation. Several days later, appellant, Kimberlin, and Keeling buried the body
in concrete at an abandoned grain silo. 
Â Â Â Â Â Â Â Â Â Â 
Â Â Â Â Â Â Â Â Â Â Accomplice Witness Testimony
Â Â Â Â Â Â Â Â Â Â Appellant initially claims that there is no non-accomplice corroboration of his
involvement in the murder. We overrule the issue.
Â Â Â Â Â Â Â Â Â Â A conviction may not rest upon the testimony of an accomplice unless that testimony
is corroborated by other evidence tending to connect the defendant to the offense. Tex.
Code Crim. Proc. Ann. art. 38.14 (Vernon 2005). The other evidence need not directly link
the accused to the crime or establish his guilt beyond a reasonable doubt. McDuff v. State,
939 S.W.2d 607, 613 (Tex. Crim. App. 1997). It need only tend to connect him to the
offense. Id. at 613. In addition, âtending to connectâ has been interpreted as âto serve,
contribute or conduce in some degree or way . . . to have a more or less direct bearing or
effect,â and while not contemplating conjecture, âhas a tendency to prove the averments in
the indictment.â Holladay v. State, 709 S.W.2d 194, 198 (Tex. Crim. App. 1986), quoting
Boone v. State, 235 S.W. 580 (Tex. Crim. App. 1922); In re C.M.G., 905 S.W.2d 56, 58
(Tex. App.âAustin 1995, no pet.). Furthermore, each case must be decided upon its own
facts and circumstances. Martinez v. State, 163 S.W.3d 92, 94 (Tex. App.âAmarillo 2005,
no pet.). Â 
Â Â Â Â Â Â Â Â Â Â Appellantâs own statement appears in the record before us. In that statement, he
admits to being present at a meeting where 1) the group spoke about the trouble Pool was
causing them and 2) one participant brought up the subject of hiring someone to kill Pool
for $10,000. The statement further reveals that appellant traveled to the scene of the
murder with Kimberlin, remained abreast of the conduct surrounding the disposition of
Poolâs body once Pool died, heard one of his compatriots say that if he ââgot bust [sic] we
were all going down,â went to the Home Depot to buy concrete and a trash can for water,
and ultimately helped bury Poolâs body in cement so it could not be found. While this alone
may not establish appellantâs guilt for murder it does tend to connect him to the crime. See
Rule v. State, 890 S.W.2d 158, 170 (Tex. App.âTexarkana 1994, pet. refâd) (finding the
evidence sufficient to connect Rule to the murder because he was present at the murder
scene, helped dispose of the body and murder weapon and attempted to flee).
Â Â Â Â Â Â Â Â Â Â Sufficiency of the Evidence
Â Â Â Â Â Â Â Â Â Â Next, appellant challenges the sufficiency of the evidence to sustain his conviction. 
We overrule this issue as well.
Â Â Â Â Â Â Â Â Â Â The standards by which we make such determinations are well known. We refer the
parties to Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) and
Watson v. State, 204 S.W.3d 404 (Tex. Crim. App. 2006) for an explanation of the same. 
Â Â Â Â Â Â Â Â Â Â The medical examiner opined that Pool died from blunt force injuries and asphyxia
and that either one alone could have caused Poolâs death. Pool had a skull fracture that
included both a calvarial fracture and a basilar fracture which could have resulted from
multiple blows. The basilar fracture would have required a force much stronger than for the
simple linear fracture on top of the head. Furthermore, the injury could have been
exacerbated by continued blows to the head. 
Â Â Â Â Â Â Â Â Â Â Appellant argues that he was not a part of the kidnaping and not responsible for the
blow to Poolâs head from the fireplace poker, therefore leaving suffocation as the only
possible means of murder by him. Nevertheless, it is undisputed that Pool was alive for a
considerable length of time after his initial head injury. Moreover, there was evidence from
Bledsoe that appellant struck Pool in the head with pliers when Pool was at the farm. Since
Pool could have died as a result of the trauma to his head alone and there is evidence that
appellant struck him in the head at the farm and/or encouraged Kimberlin to do so, a
rational jury could have found beyond a reasonable doubt that appellant was guilty of
murder and such a finding after a review of the entire record does not undermine our
confidence in the verdict. It is true that many of the witnesses gave multiple statements to
police and lied in some of those statements. However, it was for the jury to resolve any
conflicts in the evidence and determine which witnesses and what parts of their stories to
believe. Simply put, the evidence is legally and factually sufficient to support the conviction. 
Â Â Â Â Â Â Â Â Â Â We overrule appellantâs issues and affirm the judgment of the trial court.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Brian Quinn 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Chief Justice 
Do not publish. 
Â 
Â Â Â Â Â Â Â Â Â Â Â 



" Name="Colorful Grid Accent 6"/>
 
 
 
 
 
 
 
 









NO. 07-09-0377-CR

Â 

IN THE COURT OF
APPEALS

Â 

FOR
THE SEVENTH DISTRICT OF TEXAS

Â 

AT
AMARILLO

Â 

PANEL
E

Â 



AUGUST 5,  2010

Â 



Â 

THE STATE OF TEXAS, APPELLANT

Â 

v.

Â 

TY KELLY GARDNER, APPELLEE 



Â 



Â 

Â FROM THE COUNTY COURT
AT LAW NO. 2 OF POTTER COUNTY;

Â 

NO. 124935; HONORABLE PAMELA COOK SIRMON, JUDGE



Â 



Â 

Before QUINN, C.J., CAMPBELL, J., AND BOYD, S.J.[1]

Â 

Â 

MEMORANDUM OPINION

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â  In this appeal, the State of Texas presents three
issues which, it contends, demonstrate that the trial court reversibly erred in
quashing the information.Â  In the first
count of the two-count indictment, Ty Kelly Gardner (herein Gardner) was
charged with intentionally, knowingly, or recklessly causing bodily injury to
Charity Cravy (Cravy), at
the time a member of GardnerÂs household, by striking her with his hand or with
a vehicle door.Â  In the second count, he
was charged in identical language except for the allegation that Cravy was a member of his household.Â  The information was subsequently amended to
change the date of the alleged offense but was without any other change.Â  For reasons we later state, we reverse the
order of the trial court and remand the cause for further proceedings.

Â Â Â Â Â Â Â Â Â Â Â  In
pursuing its appeal, the State presents three issues for our decision:Â  1) what is the proper standard of review of a
trial court order quashing an information,Â  2) was the information with which this
appeal is concerned specific enough to inform the defendant of the accusation
against him, and 3) are the two acts alleged in the information separate
offenses?Â  Because its decision is
determinative of this appeal, we will proceed directly to consider the third
issue.

Â Â Â Â Â Â Â Â Â Â Â  Initially,
because it is a question of law, we review the sufficiency of a charging
instrument de novo.Â  State
v. Moff, 154 S.W.3d 599, 601 (Tex. Crim. App. 2004).Â  In doing so, we must first determine if the
information here in question gave adequate notice of the alleged criminal
conduct.Â  If we find that notice
sufficient, our inquiry is ended.Â 
However, if we determine the notice was insufficient, we must then
determine if, in the context of the case, the lack of notice had an impact on
the defendantÂs ability to prepare a defense, and finally, if it did, how great
the impact was.Â Â  Adams v. State, 707 S.W.2d Â 900, 903 (Tex. Crim. App. 1986).Â  

Â Â Â Â Â Â Â Â Â Â Â  Â  The gist of appelleeÂs
motion to quash was that his fifth, sixth, and fourteenth amendment rights were
denied by the Âfailure of the [i]nformation
to allege an essential element of the offense, namely what specific object was used
to strike Charity Cravy.Â Section 22.01 of the Texas
Penal Code provides that Â[a] person commits an offense if the person . . . intentionally,
knowingly, or recklessly causes bodily injury to another, including the
personÂs spouse.ÂÂ  Tex. Penal Code Ann. Â§22.01(a)(1)
(Vernon Supp. 2009).Â  In instances in
which the charging instrument alleges, in a single count, two separate offenses
arising under the same penal code provision, the jury must agree on which
offense it finds the defendant committed.Â 
Jefferson v. State, 189 S.W.3d
305, 311 (Tex. Crim. App. 2006); Dolkart
v. State, 197 S.W.3d 887, 892 (Tex. App.ÂDallas 2006, pet. refÂd).Â  Thus,Â 
it is necessary to identify the essential elements or gravamen of an
offense and the alternate modes of its commission, if any there be.Â  Pizzo v. State, 235 S.W.3d 711, 714 (Tex. Crim. App. 2007).Â  This can be best accomplished by diagramming
the statutory text according to proper grammar rules.

Â Â Â Â Â Â Â Â Â Â Â  As
the Pizzo court noted, Âthe essential
elements of an offense are, at a minimum: 1) Âthe subject (the defendant)Â; 2) Âthe
main verbÂ; 3) Âthe direct object if the main verb requires a direct object (i.e., the offense is a result-oriented
crimeÂ; [4] Âthe specific occasionÂ; and [5] the requisite mental state.ÂÂ  Id.
at 714-15.Â  Furthermore, the court
opined, Â[t]he means of commission or nonessential unanimity elements are
generally set out in Âadverbial phrasesÂ that describe how the offense was
committedÂ and, it further reasoned, Â[s]uch phrases are commonly preceded byÂ
the preposition Âby.ÂÂ  Id.Â 
Moreover, the transitive verb indicates the prohibited conduct about
which the jury must be unanimous.Â  Â See White
v. State, 208 S.W.3d 467, 468 (Tex. Crim. App. 2006) (citing Jefferson v. State, 189 S.W.3d at 314
(Cochran, J. concurring)).Â  The unanimity
requirement is not violated when the jury has the option of choosing between
alternative modes of commission of the offense.Â 
Pizzo v. State, 235 S.W.3d at
715.Â  Thus, different modes of commission
of an offense may be stated in a jury instruction if the charging instrument
alleges the different means of committing an offense in the conjunctive.Â  Id.Â  Moreover, when the acts and commission all
involve the same injury to the same complainant during the same transaction
with the same level of culpability, dispensing with jury unanimity does not
violate due process.Â  Jefferson v. State, 189 S.W.3d at 313.

Â Â Â Â Â Â Â Â Â Â Â  In
this case, the State alleged that appellant (the subject) committed an assault
(the verb) by either striking the victim (the direct object) with his cast, his
arm, or with the car door (the Âadverbial phraseÂ).Â  That being so, the State did allege an offense
and included alternate ways by which it could have been committed.Â  Thus, the trial court erred in granting the
motion to quash the information.

Â Â Â Â Â Â Â Â Â Â Â  Accordingly, we must, and do hereby,
reverse the trial court dismissal order and remand the cause for further
proceedings.Â  Â Â Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  John
T. Boyd

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Senior
Justice

Do not publish.

Â 











[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of
Appeals, sitting by assignment.Â  Tex. Gov=t Code
Ann. '75.002(a)(1) (Vernon 2009). 

Â