

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-11-00747-CR

Terry Joe **NEWMAN**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 144th Judicial District Court, Bexar County, Texas
Trial Court No. 2009CR4708A
The Honorable Angus McGinty, Judge Presiding

Opinion by:     Luz Elena D. Chapa, Justice

Sitting:     Karen Angelini, Justice
Patricia O. Alvarez, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed:  July 24, 2013

AFFIRMED

Terry Newman appeals his conviction for aggravated assault with a deadly weapon. *See* TEX. PENAL CODE ANN. § 22.02(a)(2) (West 2011). After his conviction, the court assessed and imposed punishment, sentencing Newman to thirty-five years' incarceration and a $10,000 fine. Newman contends the State's evidence was legally insufficient to convict him and the jury charge erroneously instructed the jury about the required culpable mental states. We affirm.

## LEGAL SUFFICIENCY

Newman was alleged to have committed an aggravated assault when he took part in a home invasion and robbery. The State charged him with aggravated assault by threatening imminent bodily injury against Erica Bell by pointing a gun at her or in her direction during the robbery. *See* TEX. PENAL CODE ANN. §§ 22.01(a)(2); 22.02(a)(2) (West 2011). The State charged Newman both as a principal and as a party. *See id.* § 7.01; 7.02(a)(2) (West 2011) ("A person is criminally responsible for an offense committed by the conduct of another if . . . acting with the intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense . . . ."). Newman contends no rational trier of fact could have found he participated in the home invasion and committed aggravated assault, either as a party or a principal. We will briefly set out some of the evidence a rational juror could have relied upon to find Newman guilty beyond a reasonable doubt.

Jalon Johnson, one of Bell's sons who was living at the house at the time of the invasion, identified one of the men who invaded the house as Newman. He testified he saw Newman enter the house with an assault rifle and heard him say "y'all know what time it is." According to Johnson, Newman was dressed in black clothing and wearing shorts, a hoodie, and a hat. Johnson also testified he knew Newman from the neighborhood and one of the reasons he identified that invader as Newman was because he had six gold teeth in his mouth. Johnson saw Newman run into the living room where Bell was being held. Although he lost sight of Newman, Johnson testified he saw another invader, whom he identified as John Roberts, point two guns at Bell, say "[b]itch, didn't I tell you not to get up," and fire a shot toward Bell.

Johnson testified he then retrieved his own assault rifle and opened fire on the invaders. The invaders left the home, and there was testimony that one of them was bleeding. When Johnson and some other family members followed them outside a few minutes later, they heard someone

out on the street, and Johnson's brother asked that person to identify himself. Johnson testified that person identified himself as Terry Newman.

Bell testified she was in the living room at the time of the invasion. The first person to enter was wearing a black hoodie, black pants, and a baseball hat. She could not get a good look at his face because the hoodie was over his head and hat and she could only see his profile. As he walked in, he said "you know what time it is." She testified that individual subdued two guests who were in the living room with her—forcing one to the ground and pointing his gun at the other one. At trial, although Bell did not make a positive visual identification of Newman, she thought she could identify him by voice. The court ordered Newman to stand and say "y'all know what time it is"; based on that, Bell identified Newman as the same invader who said "y'all know what time it is." She also testified that another individual with two pistols fired a shot at her and said "[d]idn't I say don't move, Bitch" after she had moved to shield her daughter in the adjacent kitchen.

From this evidence, a rational juror could have found beyond a reasonable doubt that an aggravated assault was committed against Bell when one of the invaders fired a gun at Bell and told her not to move again. *See Boston v. State*, 373 S.W.3d 832, 840 (Tex. App.—Austin 2012, pet. granted) (holding even the mere pointing of a gun at another person sufficient to prove aggravated assault by threat).

A rational juror could also have concluded that Newman was a party to that assault. "Evidence is sufficient to support a conviction under the law of parties where the actor is physically present at the commission of the offense, and encourages the commission of the offense either by words or other agreement." *Cunningham v. State*, 982 S.W.2d 513, 520 (Tex. App.—San Antonio 1998, pet. ref'd). "The evidence must show that at the time of the offense the parties were acting together, each contributing some part towards the execution of their common purpose." *Id.* Two witnesses identified Newman as a participant in the home invasion, who entered Bell's home

unannounced, dressed in black, said "y'all know what time it is,"[1] and brandished an assault rifle against other people in the home, even if not Bell specifically. This evidence was sufficient for a rational juror to conclude that Newman was present during the aggravated assault against Bell and that he encouraged it by his words and actions. Newman is therefore liable for that assault. *See id.* at 519–20.

Newman claims no rational juror could have given Johnson's testimony credence for two reasons. First, he contends that Johnson was not credible because, according to Newman's interpretation of Johnson's testimony, it is unbelievable that there could be nine people in Bell's living room and that only one person was injured by the firefight. Newman's interpretation fails to view the evidence in the light most favorable to the verdict. Photograph exhibits of the living room and Johnson and Bell's testimony can be interpreted as demonstrating that there were two people on the ground, three people standing, and one person in a wheelchair spread out over the room. Given that the three people standing were invaders, it is not unbelievable that the only person injured was one of the standing invaders.

Newman also contends Johnson was not credible because it is illogical to believe that Newman would identify himself minutes after he was chased out of a house which he had just invaded. He also relies on the testimony of one of the convicted participants of the invasion, who testified that Newman took no part in either planning or executing the invasion.

It is not our task, when reviewing legal sufficiency, to reweigh the credibility of the witnesses at trial. *See id.* at 519. The jury has the burden of wading through the testimony and exhibits produced at trial and determining what happened as a matter of historical fact. *See id.* It may believe one witness and disbelieve another, or choose to credit only part of a witness's

---

[1] Newman's brief concedes that "y'all know what time it is" could be interpreted as a threat.

testimony and discredit the rest. *See id.* In our review, we ask only whether a rational juror could have found beyond a reasonable doubt that Newman was a party to the aggravated assault against Bell. The testimony of Johnson and Bell, which the jury had the prerogative to believe in whole or in part, was legally sufficient to identify Newman as a participant in the invasion and as a party to the assault against Bell. *See id.*

Newman also contends the evidence is legally insufficient because there was no evidence that Bell subjectively felt threatened by him. However, assault by threat is a conduct-oriented offense, not a result-oriented offense. *Guzman v. State*, 988 S.W.2d 884, 887 (Tex. App.—Corpus Christi 1999, no pet.). Nowhere in the definition of aggravated assault is it required that Bell actually have felt threatened. TEX. PENAL CODE ANN. §§ 22.01(a)(2); 22.02(a)(2) (West 2011); *see In re R.M.*, No. 08-02-00105-CV, 2002 WL 31840968, at *4 (Tex. App.—El Paso 2002, no pet.) (not designated for publication) (declining to require the State to prove "that the victim reasonably felt threatened by the defendant's conduct"). All that is required is that the defendant "intentionally or knowingly threaten[] another with imminent bodily injury" while "us[ing] or exhibit[ing] a deadly weapon." TEX. PENAL CODE ANN. §§ 22.01(a)(2); 22.02(a)(2). We overrule Newman's first point of error.

## JURY CHARGE

Newman also claims the trial court failed to correctly charge the jury about the culpable mental states required to convict him. Because Newman did not object to the charge before it was submitted, we will overrule this point of error unless (1) he demonstrates the jury charge was erroneous and (2) the record shows he suffered egregious harm. *See Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984).

Newman claims the abstract portion of the charge, defining the culpable mental states necessary for conviction, contained reversible error because it defined "intentionally" and "knowingly" with respect to both conduct and results:

> A person acts intentionally, or with intent, with respect **to the nature of his conduct** or **to a result of his conduct** when it is his conscious objective or desire **to engage in the conduct** or **cause the result**.
>
> A person acts knowingly, or with knowledge, with respect **to the nature of his conduct or to circumstances surrounding his conduct** when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect **to a result of his conduct** when he is aware that his conduct is reasonably certain to cause the result.

(emphasis added). Newman's argument that the charge was erroneous rests on *Cook v. State*. 884 S.W.2d 485 (Tex. Crim. App. 1994). In *Cook*, the Court of Criminal Appeals held that, when a defendant is charged with a result-oriented offense such as capital murder, a trial court commits charge error by not limiting its definitions of culpable mental states to the result of the appellant's conduct. *Id.* at 491. Newman's case is distinguishable from *Cook* because aggravated assault by threat is a conduct-oriented offense. *Guzman*, 988 S.W.2d at 887; *Marinos v. State*, 186 S.W.3d 167, 174 (Tex. App.—Austin 2006, pet. ref'd); *Dolkart v. State*, 197 S.W.3d 887, 893 (Tex. App.—Dallas 2006, pet. ref'd). Therefore, Newman asks us to find charge error in the reverse-*Cook* scenario, where the jury charge for a conduct-oriented offense contains both conduct-oriented and result-oriented definitions of culpable mental states.

The Corpus Christi Court of Appeals appears to be the only other court to have confronted this kind of alleged charge error. *See Guzman*, 988 S.W.2d at 886–87. The court declined to apply the rule in *Cook* to the reverse scenario and held there was no error. *Id.* However, we do not decide whether the charge was actually erroneous because Newman did not suffer egregious harm.

The Court of Criminal Appeals has held "[w]here the application paragraph correctly instructs the jury, an error in the abstract instruction is not egregious." *Medina v. State*, 7 S.W.3d 633, 640 (Tex. Crim. App. 1999); *see also Plata v. State*, 926 S.W.2d 300, 302–03 (Tex. Crim. App. 1996), *overruled on other grounds by*, *Malik v. State*, 953 S.W.2d 234 (Tex. Crim. App. 1997). And indeed, on remand the court of appeals in *Cook* held that the defendant did not even suffer *some* harm from the trial court's erroneous definitions of the culpable mental state because the application paragraph correctly limited the jury's consideration to the results of the defendant's action. *Cook v. State*, No. 05-90-01378-CR, 1994 WL 533063 (Tex. App.—Dallas Sept. 28, 1994, no pet.) (op. on remand) (mem. op., not designated for publication). In Newman's case, the application paragraph correctly instructed the jury:

> Now, if you find from the evidence beyond a reasonable doubt that on or about the 10th Day of February, 2009, in Bexar County, Texas, the defendant, Terry Newman, either acting alone or together as a party with John Roberts, did use or exhibit a deadly weapon, namely: a firearm, and Terry Newman, either acting alone or together as a party with John Roberts, **did intentionally or knowingly threaten imminent bodily injury to Erica Bell**, by pointing said deadly weapon at or in the direction of Erica Bell, then you will find the defendant guilty of aggravated assault with a deadly weapon as charged in the indictment.

(emphasis added).

Because the application paragraph correctly limited the culpable mental state to Newman's alleged conduct, if there was error, there was no egregious harm. Accordingly, we overrule Newman's second point of error.

## CONCLUSION

We overrule Newman's two points of error and affirm his conviction.

Luz Elena D. Chapa, Justice

Do Not Publish