IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-1561-07






CARLOS LANDRIAN, Appellant



v.



THE STATE OF TEXAS





ON STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE FIRST COURT OF APPEALS


HARRIS COUNTY





 Cochran, J., delivered the opinion of the Court in which Keller, P.J., Johnson,
Hervey and Holcomb, JJ., joined. Price, J., filed a concurring opinion in which
Meyers, J., joined. Womack, J., filed a concurring opinion in which Keller, P.J., and
Keasler, J., joined.


O P I N I O N 


 

 We address the jury unanimity requirement in the context of an aggravated-assault
prosecution. (1) The evidence at trial showed that Luis Brizuela went to a company Christmas
party hosted by appellant's boss. As the party ended, appellant and a drunk "party-crasher"
got into a fight outside. Glass from a broken bottle that appellant threw at or in Mr.
Brizuela's direction hit him and caused Mr. Brizuela to lose his left eye. Appellant was
charged with the aggravated assault of Luis Brizuela by either (1) intentionally or knowingly
causing bodily injury by using a deadly weapon, a bottle, or (2) recklessly causing serious
bodily injury by throwing a bottle in his direction. The jury was charged in the disjunctive,
and it returned a general verdict. The First Court of Appeals held that the trial judge erred
because he did not require the jury to reach a unanimous verdict on whether appellant
intentionally or knowingly caused bodily injury by using the bottle as a deadly weapon or
whether he recklessly caused serious bodily injury by throwing the bottle in Mr. Brizuela's
direction. (2) 

 We conclude that the trial judge did not err. The jury charge required the jury to
unanimously find that appellant caused bodily injury to Luis Brizuela. The gravamen of this
result-oriented offense is "causing bodily injury." The jury did not have to be unanimous on
the aggravating factors of whether it was a "serious" bodily injury or whether appellant used
a deadly weapon. 

I.


 The evidence at trial was hotly contested. Luis Brizuela testified that he went to a
company Christmas party at the Camino Real Apartments clubhouse on December 19, 2003,
to pick up his cousin who worked for the company. Mr. Brizuela went inside and visited
with friends, including appellant, for a while. Everyone was drinking, (3) and Mr. Brizuela had
two beers. He got a call on his cell phone, so he went outside and walked around to the back
of the clubhouse to answer it. After he finished his call, he returned to the front of the
clubhouse where he saw a person lying on the ground. It was Luis Miguel, whom he had met
earlier at the party. Luis Miguel was drunk and "asleep." He had blood all over him. When
Mr. Brizuela was five feet from the front door, he saw appellant come outside. Appellant
threw a bottle at him. It hit him in the left eye. His eye began to bleed and it hurt a great
deal. Soon paramedics arrived and took him to the hospital. He had emergency surgery, but
about a week later, he had to have another operation to remove his left eye. Other witnesses
for the State largely corroborated Mr. Brizuela's account of the incident, though some of
them testified that appellant threw the bottle at Luis Miguel, but it hit Luis Brizuela instead. 
One witness stated that appellant smashed the beer bottle against the wall and then threw it
into the air, not aiming at anyone in particular.

 Witnesses for the defense, including appellant, testified that Mr. Brizuela came to the
party with two other men who were drunk. They were loud and angry. The security guard 
told them to leave the clubhouse and they did so, but they remained outside drinking. As the
party ended, appellant helped clean up the clubhouse. When he went outside to gather beer
bottles, Luis Miguel attacked him and jumped on top of him. Appellant grabbed an empty
beer bottle and "cracked" Luis Miguel on the head with it. The bottle exploded. Luis Miguel
was stunned, but he lunged toward appellant again. Other guests separated the two men, and
appellant went back inside. (4) Appellant testified that he had acted solely in self-defense. He
said that he had no idea that Luis Brizuela had been hurt until the next day when someone
told him that Mr. Brizuela had been hit with a piece of glass during the altercation. 
Appellant was very concerned and tried to call and visit Mr. Brizuela several times, but he
did not answer the door or return appellant's phone calls.

 Dr. Benz testified that he performed the initial operation on Mr. Brizuela's eye. He
thought that the injury was more consistent with an act of throwing a broken bottle into the
eye than with the act of breaking a beer bottle over someone's head and a glass shard flying 
into the eye. Dr. Benz formed this opinion because "this was the largest intraocular foreign
body I had ever taken out of an eye. In order for it to penetrate the eye it would take a
significant amount of force."

 Officer Le, the initial investigator, testified that Mr. Brizuela told him, a day after the
incident, that it was "an accident." Mr. Brizuela said that appellant threw the beer bottle at
another man and a shard of glass hit Mr. Brizuela in the face. Officer Le also said that a
bottle thrown or "slashed" at another person could cause death or serious bodily injury.

 The trial judge instructed the jury on aggravated assault and self-defense. The abstract
portion of that charge read as follows:

 A person commits the offense of assault if the person intentionally, knowingly,
or recklessly causes bodily injury to another.

 A person commits the offense of aggravated assault if the person commits
assault, as hereinbefore defined, and the person:

 (1) causes serious bodily injury to another; or

 (2) uses or exhibits a deadly weapon during the commission
of the assault.


In the application section, the trial judge submitted the two aggravating factors in disjunctive
paragraphs. (5) The jury was not required to be unanimous on which aggravating factor it had
found, "serious bodily injury" or "use of a deadly weapon." The trial judge also submitted
a special "deadly weapon" issue because he was concerned about a potential unanimity
problem. He reasoned that, if the jury found that appellant had used the bottle as a deadly
weapon, it would necessarily be unanimous on the second aggravating factor, causing bodily
injury by using a deadly weapon. (6)

 After lengthy deliberations and several notes requesting clarification, the jury returned
a "guilty" verdict. It also found that appellant had used a deadly weapon. The jury assessed
a sentence of seven years' imprisonment, but recommended community supervision.

 On appeal, appellant argued that he was "denied the right to a unanimous jury verdict
because the charge allowed the jury to convict him of aggravated assault without
unanimously determining whether [he] (1) intentionally or knowingly caused bodily injury
with a deadly weapon or (2) recklessly caused serious bodily injury." (7) The court of appeals
agreed, concluding that "the jury charge presented two types of aggravated assault without
requiring the jury to determine unanimously whether appellant caused serious bodily injury
as alleged in paragraph one or whether appellant caused bodily injury as alleged in paragraph
two." (8) It held that the error was harmful and remanded the case for a new trial. (9)

II.


 Under the Texas Constitution and Code of Criminal Procedure, a Texas jury must
reach a unanimous verdict. (10) The jury must agree that the defendant committed one specific
crime. (11) That does not mean, however, that the jury must unanimously find that the
defendant committed that crime in one specific way or even with one specific act. (12) The
Legislature has considerable discretion in defining crimes and the manner in which those
crimes can be committed. That discretion is limited only by the Due Process Clause of the
federal constitution and the Due Course of Law provision of the Texas Constitution. (13)

 In deciding what elements and facts a jury must unanimously agree on, courts 
implement the legislative intent behind the penal provision. Both Texas and federal courts
have held that the jury must be unanimous in finding that the defendant committed a specific
statutory crime. (14) But it is the legislature, not the courts, that defines the forbidden act, the
required culpability, and the particular result, if any. (15) 

 The Texas Legislature has defined the crime of assault in Section 22.01 of the Penal
Code. Subsection (a) of that provision sets out three separate and distinct assaultive crimes,
two of which are relavent to the present discussion:

 (a) A person commits an offense if the person:

 (1) intentionally, knowingly, or recklessly causes bodily injury to another,
including the person's spouse;


 (2) intentionally or knowingly threatens another with imminent bodily
injury, including the person's spouse[.]



Subsection (1)-"bodily injury" assault is a result-oriented assaultive offense and normally
a Class A misdemeanor. Subsection (2) is conduct-oriented, focusing upon the act of making
a threat, regardless of any result that threat might cause. (16) It is normally a Class C
misdemeanor. (17)

 Section 22.02 of the Penal Code then defines the crime of aggravated assault as being
an assault under Section 22.01, and the person

 (1) causes serious bodily injury to another, including the person's spouse, or

 (2) uses or exhibits a deadly weapon during the commission of the assault. (18)

Normally, Subsection (1) may act as an aggravating factor only for "bodily injury" assault
under Section 22.01(a)(1); absent special circumstances, (19) one cannot cause serious bodily
injury solely by making a threat. But the use of a deadly weapon may act as an aggravating
factor for "bodily injury" assault under Section 22.01(a)(1), as well as assault by threat under
Section 22.01(a)(2). Normally, the offense of aggravated assault, regardless of which
aggravating factor is used, is a second-degree felony. (20)

 The gravamen of the offense of aggravated assault is the specific type of assault
defined in Section 22.01. Thus, the actus reus for "bodily injury" aggravated assault is 
"causing bodily injury." Turning to the eighth-grade grammar test, the subject is "the
defendant," the verb is "cause" and the direct object is "bodily injury." (21) The precise act or
nature of conduct in this result-oriented offense is inconsequential. (22) "What matters is that
the conduct (whatever it may be) is done with the required culpability to effect the result the
Legislature has specified." (23) 

 This actus reus must be accompanied by a culpable mental state. In its "bodily injury"
assault subsection, the legislature stated that any of three culpable mental states suffices:
intentionally, knowingly, or recklessly causing bodily injury. The legislature was apparently
neutral about which of these three mental states accompanied the forbidden conduct because
all three culpable mental states are listed together in a single phrase within a single
subsection of the statute. There is no indication that the legislature intended for an
"intentional" bodily injury assault to be a separate crime from a "knowing" bodily injury
assault or that both of those differ from a "reckless" bodily injury assault. (24) All three
culpable mental states are strung together in a single phrase within a single subsection of the
statute. All result in the same punishment. They are conceptually equivalent. (25) Because the
Penal Code explicitly states that proof of a greater culpability is also proof of any lesser
culpability, (26) it would not matter, for example, if six members of a jury found that the
defendant intentionally killed his victim and six members found that he had knowingly killed
his victim. (27) The same is true with "bodily injury" assault. (28)

 Aggravated assault increases the penalty for simple "bodily injury" assault if the
victim suffers a significantly greater degree of bodily harm-serious bodily injury, rather than
mere bodily injury. The type of injury does not vary, only the degree of the injury. "Serious"
is an adjective that modifies "bodily injury." It does not change the direct object, it merely
describes it.

 Aggravated assault also increases the penalty for simple "bodily injury" assault if the
defendant's manner of committing that assault increases the likelihood of death or serious
bodily injury because he used or exhibited a deadly weapon during the assault. 

 But, as we have recently held, both of these means of committing aggravated bodily
assault involve the use of a deadly weapon:

 Aggravated assault may be committed in only two ways: (1) by
"caus[ing] serious bodily injury" or (2) by "us[ing] or exhibit[ing] a deadly
weapon during the commission of the assault." Each of these involves the use
of a deadly weapon. The first way necessarily implies the use of a deadly
weapon, which is "anything that in the manner of its use or intended use is
capable of causing death or serious bodily injury." The second way specifies
the use of a deadly weapon. Therefore an allegation that a defendant
committed aggravated assault gives him notice that the deadly nature of the
weapon alleged in the indictment would be an issue at trial and that the State
may seek an affirmative finding on the use of the weapon. (29) 

Thus, both statutory aggravators of simple assault involve the use of a deadly weapon, either
because a serious bodily injury is necessarily caused by a deadly weapon or because a deadly
weapon is explicitly pled in the indictment. (30)

 In sum, simple "bodily injury" assault is punished more severely depending upon the
degree of the victim's injury or the manner in which the defendant committed the particular
assault. The Texas Legislature has evinced no intent that jurors need be unanimous about
which aggravating factor or element that they find-severity of injury or manner in which the
defendant caused the injury. (31) It is still the same single criminal act and still the same single
bodily injury to the victim. Because the aggravated-assault statute defines two or more
circumstances or factors by which the defendant's punishment for a specific criminal act is
increased, the defendant may be convicted if each juror concludes that at least one of the
aggravating factors or elements exist. (32)

 Several other states, in analyzing similar aggravated-assault statutes, have also found
that their statutes did not set out separate and distinct offenses. Rather, the aggravating
factors or elements are simply descriptions of separate means by which a single offense of
assault may be committed. As noted by the Alaska Supreme Court in State v. James, (33)
"Alaska's codification of the common law crime of first-degree assault prohibits only one
act: a physical assault." (34) It may be committed in either of two ways-by using "a dangerous
instrument" or by causing "serious physical injury"-but it is still one criminal act with one
bodily injury to one victim. (35) The same is true when the statutory subsections set out
different mental states, but require a single assaultive act. (36) 

 With that general background, we turn to the present case.

III.


 In the court of appeals and in this Court, appellant argues that "bodily injury"
aggravated assault is really composed of two separate and distinct criminal offenses. He is
mistaken. He begins by correctly noting that the statutory definition of simple assault sets
out three distinct criminal offenses under Section 22.01(a)(1)-(3). These are "bodily injury"
assault, assault by threat, and "offensive contact" assault. So far, so good. But he then
contends that "adding the aggravating elements to the simple assault statute" creates "several
different combinations" and "a variety of different ways of having an aggravated assault." (37) 
 That is true only if the underlying simple assault is pled as both "bodily injury" assault and
assault by threat. In Marinos v. State, (38) Dolkart v. State, (39) and Gonzales v. State, (40) three
different courts of appeals properly held that simple "bodily injury" assault is a separate and
distinct crime from simple assault by threat. (41) Thus aggravated assault under each distinct
assaultive crime is a separate crime: aggravated assault with the underlying crime of assault
by causing bodily injury and aggravated assault with the underlying crime of assault by
threat. (42) The first is a result-oriented offense and the second is a conduct-oriented offense. 
 But once the underlying type of assault is defined, then either of the aggravating
factors set out under Section 22.02(a) may elevate that distinct assaultive crime to a second-
degree felony. The aggravating factors or elements are simply the way in which the simple
assault becomes a more serious offense. 

 In this case, for example, there is no dispute that appellant committed one single
assaultive act-he caused bodily injury to Luis Brizuela. He caused this result by (1) throwing
a broken beer bottle at Mr. Brizuela, (2) throwing a beer bottle at Luis Miguel, (3) throwing
a broken beer bottle into the air, or (4) "crashing" a beer bottle on Luis Miguel's head. 
Under the State's version of facts, there was no dispute that appellant wielded a beer bottle
and that glass from that bottle hit Mr. Brizuela in the eye. (43) Regardless of which version of
the facts the jury believed, there was only one criminal act and it involved a beer bottle which
blinded Mr. Brizuela in the left eye. There was no dispute that Mr. Brizuela suffered a
serious bodily injury. There was no dispute that the broken beer bottle was capable of
causing (and did cause) a serious bodily injury. Indeed, the jury unanimously found that the
beer bottle was a deadly weapon. 

 The eighth-grade grammar test shows that appellant (the subject) caused (the verb)
a bodily injury (the direct object) to one person, Mr. Brizuela. Under one aggravating factor,
the degree (but not the type) of the bodily injury suffered by Mr. Brizuela was increased from
simple "bodily injury" to "serious bodily injury." These were not two distinct injuries; they
were not two different types of injuries. They were the same bodily injury, but one was more
serious in degree than the other and thus deserving of greater punishment. (44) Under the other
aggravating factor, appellant need not have caused serious bodily injury (though there was
no dispute that he did), but he must have used a deadly weapon to cause bodily injury. The
second aggravating factor describes "how" he caused a bodily injury and modifies the verb
"caused." Under each theory, the gravamen of the offense was the same. 

 Yet another way of testing whether the State charged one aggravated assault or two
distinct and separate aggravated assault offenses is to ask whether the State could have
obtained two aggravated assault convictions stemming from appellant's criminal conduct. 
Would double jeopardy allow appellant to be punished for causing serious bodily injury by
putting out Mr. Brizuela's left eye and also punished for putting out Mr. Brizuela's left eye
with a deadly weapon by throwing a bottle at or in his direction? The answer is obvious:
appellant committed only one assault during a single incident and may be punished for only
one assault. (45)

 Appellant and the court of appeals incorrectly concluded "that the trial court erred in
submitting a jury charge without requiring the jury unanimously to agree that appellant either
intentionally and knowingly caused bodily injury [while using a deadly weapon] or recklessly
caused serious bodily injury." (46) We hold that the trial judge did not err in his instructions
concerning a unanimous jury verdict.

 We therefore reverse the judgment of the court of appeals and remand the case to that
court to address appellant's remaining points of error.

Delivered: October 8, 2008

Publish
1. We granted the State's sole ground for review:

 The court of appeals erred in holding the trial court erred in submitting a jury
charge without requiring the jury unanimously to agree that appellant either
intentionally and knowingly caused bodily injury or recklessly caused serious
bodily injury.
2. Landrian v. State, ___ S.W.3d ___, ___, No. 01-05-00697-CR, 2007 Tex. App. LEXIS
6290 (Tex. App.- Houston [1st Dist.] Aug. 9, 2007).
3. Appellant and other defense witnesses said that there was no drinking at the party, but
that some "party-crashers" had brought beer with them, which they kept outside the clubhouse. 
According to the defense witnesses, Mr. Brizuela arrived with Luis Miguel who was drunk.
4. Some of the State's witnesses testified that appellant beat the drunken Luis Miguel for
five minutes. When Luis Miguel fell to the ground, bloody and motionless, appellant continued
to beat and kick him. Appellant then went into the clubhouse and re-emerged with a beer bottle
which he broke. Then he threw it straight at Mr. Brizuela who happened to be standing nearby.
5. The application paragraphs read as follows:

 Now, if you find from the evidence beyond a reasonable doubt that on or about the 19th
day of December, 2003, in Harris County, Texas, the defendant, Carlos Landrian, did then and
there unlawfully, intentionally or knowingly cause bodily injury to Luis Brizuela by using a
deadly weapon, namely, a bottle, as alleged in Paragraph 1 of the indictment; or

 If you find from the evidence beyond a reasonable doubt that on or about the 19th day of
December, 2003, in Harris County, Texas, the defendant, Carlos Landrian, did then and there
unlawfully, recklessly cause serious bodily injury to Luis Brizuela by throwing a bottle in the
direction of Luis Brizuela, as alleged in Paragraph 2 of the indictment, then you will find the
defendant guilty as charged in the indictment.
6. The trial judge explained:

 I also believe that the State is entitled to a verdict with alternative pleading
paragraphs, a general verdict as to that. My concern up to this point was since
there was no allegation of deadly weapon in the reckless paragraph, the second
paragraph of the indictment, that that would cause a conflict or at least confusion
for the Court should the jury find the Defendant guilty with a general verdict and
not specify which paragraph.

 My concern was that we would then at that point not know if the jury had
reached a verdict on the first paragraph or the second paragraph or some
combination thereof and, therefore, would not know if the jury had, in fact, made
a finding of guilt as to the use of a deadly weapon.

 . . .

 And, therefore, my solution to the problem is to give the jury the two
choices of guilty-pardon me-not guilty or guilty as charged in the indictment, and
then to include a special issue which asks the jury whether or not they find-make
an affirmative finding of a deadly weapon.
7. Landrian, ___ S.W.3d at ___, 2007 Tex. App. LEXIS 6290, at *10.
8. Id. at *18-19.
9. Id. at *24-27.
10. See Stuhler v. State, 218 S.W.3d 706, 716 (Tex. Crim. App. 2007); Ngo v. State, 175
S.W.3d 738, 745 (Tex. Crim. App. 2005).
11. Stuhler, 218 S.W.3d at 717-19 (injury to a child is a result-oriented offense; the
gravamen of the offense is the specific result-serious bodily injury, serious mental deficiency,
bodily injury-"and the degree of the offense is determined, at least in part, according to which of
the results the defendant's act or omission caused").
12. See, e.g., Jefferson v. State, 189 S.W.3d 305, 312 (Tex. Crim. App. 2006) (holding that
any "'act or omission' constitute[s] the means of committing the course of conduct element of
injury to a child.").
13. See Schad v. Arizona, 501 U.S. 624, 632 (1991) (stating that the Due Process Clause
places limits on "a State's capacity to define different courses of conduct, or states of mind, as
merely alternative means of committing a single offense, thereby permitting a defendant's
conviction without jury agreement as to which course or state actually occurred."); Jefferson, 189
S.W.3d at 312 (federal due process "fundamental fairness and rationality test . . . focuses on
historical practice and the relative moral and conceptual equivalence of the alternate modes or
means of committing the crime.").
14. Schad, 501 U.S. at 631-33; Valdez v. State, 218 S.W.3d 82, 84 (Tex. Crim. App. 2007)
(the question of what the jury must be unanimous about is determined by the legislative intent of
the applicable statute).
15. Valdez, 218 S.W.3d at 84.
16. See Marinos v. State, 186 S.W.3d 167, 174-75 (Tex. App.-Austin 2006, pet. ref'd)
("causing bodily injury to another and threatening another with imminent bodily injury are
separately defined statutory criminal acts. . . . [W]e conclude that bodily injury assault and
assault by threat are different criminal acts for which a defendant may be convicted only by a
unanimous finding of guilt."); see also Dolkart v. State, 197 S.W.3d 887, 893 (Tex. App.-Dallas
2006, pet. ref'd) (concluding that legislature created two separate criminal offenses in defining
"bodily injury" assault and assault by threat; noting that "the focus of the two subsections is
different: one is intended to punish the defendant for causing bodily injury; the other is intended
to punish a defendant for engaging in threatening behavior. Finally, we find support for this
determination because the legislature assigned different punishment ranges to the two
offenses.").
17. Section 22.01(c) sets out various circumstances that elevate the level of punishment for
assault-by-threat from a Class C misdemeanor to a higher level misdemeanor.
18. Tex. Penal Code § 22.02(a).
19. For example, it is theoretically possible to make a threat that causes the person to have
a heart attack that causes serious bodily injury.
20. Tex. Penal Code § 22.02(b). It may be elevated to a first-degree felony under certain
circumstances specified in Subsections (b)(1) and (b)(2).
21. Strictly speaking, the direct object is "injury," and the adjective "bodily" describes what
type of injury, but because there is no "mental injury" or "emotional injury" assaultive offense
(although assault by "offensive contact" is a type of emotional or mental result), one should use
the noun phrase "bodily injury" to describe the direct object because an injury that does not cause
harm to the body does not qualify under Section 22.01(a)(1).
22. Alvarado v. State, 704 S.W.2d 36, 39 (Tex. Crim. App. 1985).
23. Id.
24. See Schad, 501 U.S. at 644. In Schad, the Supreme Court noted that a state may draft a
murder statute that allows for the disjunctive submission of different culpable mental states, such
as "premeditated murder" and "felony murder," because a legislature might reasonably find that
they are morally equivalent alternatives. Id.
25. See id.; see also Jefferson, 189 S.W.3d at 313.
26. Tex. Penal Code § 6.02(e) ("Proof of a higher degree of culpability than that charged
constitutes proof of the culpability charged."); see Flores v. State, 245 S.W.3d 432, 440 (Tex.
Crim. App. 2008) (noting that "proof of intent would, as a matter of law, establish recklessness
as well").
27. See e.g., Lugo-Lugo v. State, 650 S.W.2d 72, 80 (Tex. Crim. App. 1983) (murder is
"committed when the conscious objective or desire of the perpetrator was to cause death or
where the perpetrator was aware that his conduct was reasonably certain to cause death"); see
also Medina v. State, 7 S.W.3d 633, 636 (Tex. Crim. App. 1999) (capital murder under Tex.
Penal Code § 19.03(a)(7)(A) "includes within its ambit both intentional and knowing
murders"); Jefferson, 189 S.W.3d at 309-11 (defendant not deprived of a unanimous jury
verdict when jury required to find that he "intentionally or knowingly" caused serious bodily
injury to a child by either an act or omission); Johnson v. State, 233 S.W.3d 109, 113 (Tex.
App.-Houston [14th Dist.] 2007, no pet.) ("'Although [Texas Penal Code] sections 19.02(b)(1)
and (b)(2) differ in their descriptions of the mental state required for culpability, jurors are not
required to agree on the defendant's specific mental state; rather, they need only agree that the
defendant possessed one of the alternate mental states that satisfy the element of intent under the
statute'") (citation omitted).
28. See Bell v. State, 693 S.W.2d 434, 438 (Tex. Crim. App. 1985) (in aggravated assault
prosecution, noting that "when the State established the higher culpable mental state of intent or
knowledge, it necessarily established the lower culpable mental state of recklessness."); see, e.g.,
Wells v. Commonwealth, 561 S.W.2d 85, 88 (Ky. 1978) (jury charge in aggravated assault trial
properly submitted two distinct culpable mental states-intent and wantonness manifesting
extreme indifference to the value of human life-in the disjunctive and did not require unanimity
because "[e]ither mental state will support a conviction of assault in the first degree and
punishment for such crime. The legal effect of the alternative conclusions is identical.").
29. Blount v. State, 257 S.W.3d 712, 714 (Tex. Crim. App. 2008).
30. Id.
31. See Marinos, 186 S.W.3d at 174-75 (concluding that trial judge correctly submitted
alternate disjunctive paragraphs for "bodily injury" aggravated assault because those paragraphs
set out alternate manners and means, not separate criminal acts); compare Dolkart, 197 S.W.3d
at 893 (trial court erred in submitting both aggravated assault by causing bodily injury and
aggravated assault by threat disjunctively without requiring unanimity on which separate offense
jury found); Gonzales v. State, 191 S.W.3d 741, 748-49 (Tex. App.-Waco 2006, pet. ref'd)
(following Marinos, and holding that aggravated assault by causing "bodily injury" is a distinct
criminal offense from aggravated assault by threat).
32. Marinos, 186 S.W.3d at 175.
33. 698 P.2d 1161 (Alaska 1985).
34. Id. at 1167. 
35. Id. at 1163, 1166 ("In the instant case there is only one criminal act alleged and only
one incident involved. All twelve jurors agreed that [defendant] had committed the act."). See
also State v. Pena, 104 P.3d 873, 876 (Ariz. Ct. App. 2005) ("The jury need not, however, have
unanimously agreed on the manner in which Defendant committed aggravated assault as long as
each juror found that Defendant committed aggravated assault based on either serious physical
injury or use of a dangerous instrument."); Wells, 561 S.W.2d at 88 (jury unanimity not required
in aggravated assault case in which jury was instructed that it could convict defendant if he
inflicted serious physical injury and he (1) intended to cause serious physical injury and used a
deadly weapon, or (2) caused serious physical injury under circumstances manifesting extreme
indifference to the value of human life by wantonly [recklessly] engaging in conduct that created
a grave risk of death); see generally, Tim A. Thomas, Requirement of Jury Unanimity as to Mode
of Committing Crime Under Statute Setting Forth the Various Modes by Which Offense May Be
Committed, 75 A.L.R.4th 91 (1989 & Cumulative Supp.).
36. State v. Richardson, 600 P.2d 696, 698 (Wash. Ct. App. 1979) (instruction given in
second-degree assault prosecution, which authorized conviction if defendant either knowingly 
inflicted grievous bodily harm upon victim or if he caused that harm by criminal negligence, did
not deny defendant a unanimous jury verdict). The Washington Legislature had expressly stated
that proof of a knowing mental state is sufficient to prove criminal negligence, and the court
explained that [t]he rationale behind this statute doubtlessly is that, if one acts carelessly, the
social vice of his conduct is sufficient to warrant a conviction and, if he possesses
actual knowledge so that his social conduct is even more offensive, he should at
least be liable equally with one who is merely negligent. This is particularly true
because the penalty is the same in either case, and one should not be able to
escape liability for negligence by saying that he was not negligent because he
acted willfully or knowingly.

Id. at 698 n.2.
37. Appellant's Brief at 15.
38. 186 S.W.3d 167, 174-75 (Tex. App.-Austin 2006, pet. ref'd).
39. 197 S.W.3d 887, 893 (Tex. App.- Dallas 2006, pet. ref'd).
40. 191 S.W.3d 741, 748-49 (Tex. App.-Waco 2006, pet. ref'd).
41. Marinos, 186 S.W.3d at 174-75; Dolkart, 197 S.W.3d at 893; Gonzales, 191 S.W.3d at
748-49.
42. Marinos, 186 S.W.3d at 174-75; Dolkart, 197 S.W.3d at 893; Gonzales, 191 S.W.3d at
748-49. In Marinos, for example, the court of appeals stated that the trial court "erred by failing
to require a unanimous verdict of finding him guilty of either aggravated bodily injury assault or
aggravated assault by threat." 186 S.W.3d at 174. These two aggravated offenses depend upon
separate criminal acts. However, the court of appeals further explained that jury unanimity was
not required "with respect to the specific manner or means by which the aggravated bodily injury
assault or aggravated assault by threat was committed." Id. at 175. The aggravating factors are
simply different manners of committing a single offense. Id.
43. The defensive theory was that he wielded the bottle solely in self-defense.
44. The court of appeals relied heavily upon this Court's reasoning in Stuhler v. State, 218
S.W.3d 706 (Tex. Crim. App. 2007), in concluding that "bodily injury" aggravated assault is
really two separate crimes depending on which aggravating factor is proven. Landrian, ___
S.W.3d at __, 2007 Tex. App. LEXIS 6290, at *15-21. But in Stuhler, we noted that the
Legislature defined three separate and distinct results-serious bodily injury, serious mental
deficiency, or plain bodily injury-in the injury to a child statute. 218 S.W.3d at 718. Two of
those results-serious bodily injury and serious mental deficiency-are entirely different types of
injuries; one is physical and the other mental. They are equally culpable and thus subject to the
same punishment range. Two of those results-serious bodily injury and plain bodily injury-are
the same type of injury, but they differ in degree. They are listed in separate subsections of the
statute because they have different punishment ranges, with serious bodily injury being punished
more severely than simple bodily injury. See Tex. Penal Code § 22.04(a), (e) & (f). In
contrast, aggravated "bodily injury" assault is a second-degree offense regardless of which
aggravating factor applies. Simple "bodily injury" assault is punished as a misdemeanor under
Section 22.01(a)(1), while aggravated "bodily injury" assault is punished as a second-degree
felony. They are not equally culpable crimes and are not the same criminal offense, but they are
both based upon a single act of causing "bodily injury."
45. See State v. James, 698 P.2d 1161, 1166 (Alaska 1985) ("When a defendant commits
first degree assault by any of the three methods, the victim is fortunate to survive. Moreover, we
find no evidence that the legislature intended by [the aggravated assault statute] to expose
defendants to multiple punishments. We may therefore assume that a single punishment was
envisioned for violation of the statute.").
46. Landrian, ___ S.W.3d at __, 2007 Tex. App. LEXIS 6290, at *20.