COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

EDUARDO TORRES, § 

§ No. 08-11-00151-CR

Appellant, §

§ Appeal from the

v. §

§ 120th Judicial District Court

THE STATE OF TEXAS, §

§ of El Paso County, Texas

Appellee. §

§ (TC#20100D02887)

§

## O P I N I O N

Appellant Eduardo Torres ("Torres") appeals his convictions for violation of a protective order and assault. Torres requests that this Court reverse the judgment of the trial court and render a judgment of acquittal or remand his case for a new trial. Torres raises three issues: (1) the trial court violated Torres's Sixth Amendment right to confront his accuser by disallowing proper impeachment; (2) the trial court erred when it gave a jury instruction that allowed a conviction on a less than unanimous verdict; and (3) Torres's due process right to a fair trial was violated by the State's repeated improper arguments. We affirm.

## BACKGROUND

On April 22, 2010, Torres was served with an ex-parte temporary restraining order, prohibiting him from, *inter alia*, committing acts of family violence; communicating directly with Maria DeLourdes Torres,[1] his wife, in a harassing or threatening manner; and going within two hundred (200) yards of Maria's place of employment, White Acres Good Samaritan Retirement

---

[1] Because Appellant and the complaining witness have the same surname, we will refer to Maria DeLourdes Torres as "Maria."

Assisted-Living Facility.

Torres, a Border Patrol agent, testified that when he received the protective order, he contacted Maria, both by telephone and text messages. Torres testified that Maria returned his call and they agreed to meet at her place of employment shortly before 6 a.m. Torres admitted that he knew the protective order prohibited him from going to her place of employment and that he immediately contacted Maria once he received the protective order. On cross-examination, Torres again admitted that he read the protective order and contacted his wife, despite the plain language of the order that he was prohibited from doing so.

Maria told the jury that on April 23, 2010, at approximately 6 a.m., Torres approached her while she was in her vehicle in the parking lot at her place of employment. She stated that when she pulled into the parking lot, she turned off her vehicle's engine and turned to the left. She saw a man running in the parking lot, but was unable to recognize him. She turned to her right to grab her lunch and when she was about to exit her vehicle, she saw Torres standing there trying to open the door. Maria testified that she struggled with him, trying to close the door, but that Torres was able to open the door and enter the vehicle. According to Maria, Torres told her to move over into the passenger seat and forced himself into the driver's seat. Maria testified that Torres was armed with his service weapon during this time. Maria stated that Torres drove her to their former family home where he sexually assaulted her.

Torres testified that when they met in the parking lot, he spoke with Maria and they agreed to go to their former family residence to talk. He told the jury that while at the home he engaged in consensual sexual intercourse with Maria.

Torres informed the jury that Maria was a jealous wife, who regularly went through

2

Torres's phone to see who had been texting and calling him. At trial, counsel for Torres called Torres's sister, Emma Torres, and attempted to elicit testimony regarding conversations between Emma and Maria concerning Maria's marital problems. Maria had previously denied that she was angry when she discovered that Torres had a 21-year old son from a prior relationship. Maria also denied telling Torres's sister Emma that she was angry and going to get even with Torres.

When Torres's counsel asked Maria what she had told Emma, counsel for the State objected as to hearsay. Torres's counsel argued that the response "[g]oes to impeachment." At a bench conference, counsel for Torres argued that while the testimony might be hearsay, it was admissible as a prior inconsistent statement to impeach Maria's testimony. The trial court sustained the State's objection, noting Torres's exception.

Torres offered a bill of exceptions, including the testimony from Emma Torres. Emma testified that Maria called her and was upset. Emma advised Maria to talk to Torres, and in response Maria said that she "didn't need [Torres] for anything and that she was going to get him back."

Torres was indicted for offenses including violation of a protective order, aggravated assault, aggravated kidnapping, and aggravated sexual assault. Following a four-day trial, the jury found Torres guilty of the lesser offenses of violation of protective order, a Class A misdemeanor, and assault, a Class C misdemeanor. By agreement, Torres was sentenced to serve one year in the county jail, probated for two years, on the violation of a protective order conviction and was assessed a $500 fine on the assault conviction. Torres timely appealed.

## DISCUSSION

As noted above Torres raises three issues: (1) the trial court violated Torres's Sixth

3

Amendment right to confront his accuser by disallowing proper impeachment; (2) the trial court erred when it gave a jury instruction that allowed less than a unanimous verdict; and (3) Torres's due process right to a fair trial was violated by the State's repeated improper arguments.

**Application**

In his first issue, Torres argues that the trial court violated his Sixth Amendment right to confront his accusers by disallowing proper impeachment of Maria's testimony. In other words, he contends that the trial court improperly limited his cross-examination of Maria.

During a bench conference, Torres's counsel made several arguments regarding the admissibility of the testimony, commencing with "[i]t is hearsay, but hearsay is admissible if it's for impeachment . . . you can impeach people with what's called a prior inconsistent statement, Judge. And that's what this is." The trial court requested a rule of evidence in support of his argument, and counsel ultimately responded "Judge, 801(1) is the Rule that I am going to – among other rules, but that primarily."[2] The State argued that the impeachment material must have been given under oath, pursuant to Rule 38.07. The trial court sustained the State's objection. Counsel for Torres asked the court to note his exception, arguing that Torres was denied "the right to a fair and impartial trial and effective assistance of counsel under the 5th, 6th and 14th Amendments to the United States Constitution, as well as any appropriate Article or Section under the Texas Constitution." The court noted the exception and counsel for Torres then argued that:

> That Rule says if somebody gets on the stand and testifies and makes a statement under oath, I am entitled to bring in what's called a prior inconsistent statement that she made to someone else to show that she's not being truthful or whatever impeachment. That's what that Rule says.

---

[2] At trial, Torres's counsel did not specify which subsection of 801(1) applied. The State contends that its interpretation is that Rule 801(e)(1) was applicable. We agree that this is a reasonable interpretation of the Rule asserted in the record.

4

Counsel for Torres made a further objection, arguing that he was "entitled to show that the complaining witness under oath lied, and I can do it by showing that she made another statement to somebody else."

In his brief, Torres argues that the Sixth Amendment to the United States Constitution and Rule 613(a) of the Texas Rules of Evidence support his argument that the court erred. Torres contends that the trial court's preclusion of Torres's questions as to Maria's bias and motivation following her discovery that Torres had an adult son, prohibited Maria from being subjected to the adversarial process, and therefore "completely undermined" Torres's ability to present a defense. He contends that the trial court's actions violated his right to confront the State's chief witness and denied Torres his right to assistance of counsel.

The State counters that Torres failed to preserve error because his appellate complaint does not comport with his trial complaint. In addition to arguing that Torres waived any issue under Rule 613 by not articulating the Rule to the trial court, the State also contends that the trial court did not abuse its discretion in excluding Emma Torres's testimony because it did not qualify as a prior inconsistent statement under Rule 613(a).

While Torres did not present an argument that referred specifically by number to Rule 613 to the trial court, thereby potentially waiving his argument, *see Loredo v. State*, 32 S.W.3d 348, 351 (Tex.App.--Waco 2000, pet. ref'd)(appellate complaint that limitation on appellant's cross-examination of the complainant regarding prior accusations violated Rule 613(b) was not preserved for appellate review because appellant did not argue to the trial court that the testimony was admissible under Rule 613(b)), we conclude that his repeated references to impeachment by a prior inconsistent statement were sufficient to apprise the trial court of his arguments under Rule

5

613 of the Texas Rules of Evidence. Accordingly, this issue was preserved for our review.

The State next argues that Torres failed to lay the proper foundation for the admission of a prior inconsistent statement under Rule 613 because he did not specifically tell the witness "the contents of such statement and the time and place and the person to whom it was made . . . ." TEX.R.EVID. 613(a). However, given her denials, the record is clear that Maria understood the questions being posed to her and she was aware of the contents of the statement and the person to whom the statement was made, namely Emma Torres. It is also clear that Maria understood when and where the statement was made. We find that a sufficient foundation exists for admission of the prior inconsistent statements.

### Standard of Review

The Sixth Amendment to the Constitution of the United States guarantees the accused in a criminal prosecution the right to confront the witnesses against him. *Pointer v. Texas*, 380 U.S. 400, 403, 85 S.Ct. 1065, 1067-68, 13 L.Ed.2d 923 (1965). The Confrontation Clause includes the right to cross-examine a testifying State's witness and to impeach that witness with relevant evidence. *See Carroll v. State*, 916 S.W.2d 494, 497 (Tex.Crim.App. 1996). A witness's prior inconsistent statements are admissible to impeach a witness. *Garcia v. State*, 871 S.W.2d 279, 284 (Tex.App.--El Paso 1994, no pet.h.). The rule of admissibility of evidence of prior inconsistent statements should be liberally construed and the trial judge should have discretion to receive any evidence which gives promise of exposing a falsehood. *Id.*

While Torres attempts to frame this issue as a violation of his right under the Confrontation Clause, necessitating a constitutional review under TEX.R.APP.P. 44.2(a), we conclude that his argument is more appropriately characterized as ordinary trial error, inasmuch the trial court

6

limited Torres's ability to cross-examine Maria.   Limitation of cross-examination, absent more, is non-constitutional error.   *See Donnelly v. DeChristoforo*, 416 U.S. 637, 646-47, 94 S.Ct. 1868, 1873, 40 L.Ed.2d 431 (1974)(holding that there is a meaningful distinction between ordinary trial error and the sort of egregious misconduct that results in a denial of due process). Non-constitutional error is disregarded, unless it affects a substantial right of the appellant.   *See* TEX.R.APP.P. 44.2(b).   A substantial right is affected when the error had a substantial, injurious effect or influence on the jury's verdict.   *See King v. State*, 953 S.W.2d 266, 271 (Tex.Crim.App. 1997).   We assess the harm to the appellant, if any, after reviewing the record, although an appellant has no burden to show harm under Rule 44.2(b).   *See Johnson v. State*, 43 S.W.3d 1, 5 (Tex.Crim.App. 2001); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex.Crim.App. 1998)(a criminal conviction should not be reversed for non-constitutional error under TEX.R.APP.P. 44.2(b) if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect).

We review a trial court's limitation of cross-examination of a witness for an abuse of discretion.   *Walker v. State,* 300 S.W.3d 836, 843 (Tex.App.--Fort Worth 2009, pet. ref'd).   A trial court abuses its discretion if it acts without reference to any rules or guiding principles, *Montgomery v. State,* 810 S.W.2d 372, 380 (Tex.Crim.App. 1990), or if its ruling goes beyond the zone of reasonable disagreement.   *Walker*, 300 S.W.3d at 844.   While a defendant has a constitutional right to cross-examine a witness, the trial court maintains broad discretion to impose reasonable limits on that cross-examination.   *See Lopez v. State,* 18 S.W.3d 220, 222 (Tex.Crim.App. 2000).   Defendants are generally entitled to cross-examine a witness by inquiring into any area which is reasonably calculated to show a witness's motive, bias or interest in

7

testifying. *Carroll v. State*, 916 S.W.2d 494, 497 (Tex.Crim.App. 1996). However, the extent to which a defendant might cross-examine a witness to establish bias rests within the sound discretion of the trial court.[3] *Ramirez v. State,* 976 S.W.2d 219, 223 (Tex.App.--El Paso 1998, pet. ref'd).

Torres properly laid the foundation for Emma's testimony and the necessary predicates were met. The evidence was relevant to show Maria's bias and should have been allowed.

However, our review of the entire record shows that the trial court's failure to allow Torres to effectively impeach Maria as to this one issue did not contribute to either the conviction or punishment. Obviously, the jury chose not to believe the majority of Maria's testimony as it was entitled to do. *See Wesbrook v. State,* 29 S.W.3d 103, 111 (Tex.Crim.App. 2000)("The jury is the exclusive judge of the credibility of witnesses and of the weight to be given testimony, and it is also the exclusive province of the jury to reconcile conflicts in the evidence."). It is apparent by the jury's verdict that Torres successfully challenged Maria's credibility and weight of the evidence presented by the State. Torres was acquitted on felony charges of aggravated kidnapping, aggravated sexual assault, and felony assault and was convicted of misdemeanor offenses of violation of a protective order and assault. The verdict is supported by Torres's own admissions.

We find, after a review of the entire record, that the trial court's non-constitutional error did not affect Torres's substantial rights and did not influence the jury's verdict. Torres's first issue is

---

[3] We also note that a defendant does not have an absolute constitutional right to impeach the general credibility of a witness in any fashion he chooses. *See Hammer v. State,* 296 S.W.3d 555, 562 (Tex.Crim.App. 2009). While the Confrontation Clause guarantees an opportunity for effective cross-examination, trial courts have the discretion to limit cross-examination as inappropriate for any number of reasons. *Carpenter v. State,* 979 S.W.2d 633, 634 (Tex.Crim.App. 1998), *citing Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986); *Smith v. State,* 352 S.W.3d 55, 64 (Tex.App.--Fort Worth 2011, no pet.).

overruled.

## Error in jury instruction

Next, Torres alleges that the trial court committed error when it provided a jury instruction that allowed a conviction on a less-than-unanimous jury verdict.

Without objection from Torres, the trial court gave the following instruction to the jury:

As to violation of a protective order:

'If you find from the evidence beyond a reasonable doubt that on or about the 23rd day of April, 2010, in El Paso County, Texas, the defendant, Eduardo Torres, knowingly or intentionally communicated directly in a threatening or harassing manner with Maria Torres, or went to or near the place of employment or business of Maria Torres, then you shall find the defendant, Eduardo Torres, guilty of violation of a protective order,' signing Verdict Form B.

Torres argues that he was charged with violation of a protective order by making threatening phone calls, and by going to a prohibited location, therefore, because the jury was charged in the disjunctive, Torres was not ensured that the jury unanimously determined that he committed an illegal act. Torres contends that violation of the protective order by communicating with Maria and violation of a protective order by going near Maria's place of employment are separate and distinct offenses. Torres adopts the argument in *Dolkart v. State*, 197 S.W.3d 887 (Tex.App.--Dallas 2006, pet. ref'd), that different statutory subsections separated by an "or" are indicative that any one of the proscribed conduct provisions constitutes an offense. *See Dolkart,* 197 S.W.3d at 893-94.

Jury unanimity is required in all criminal cases. *Ngo v. State*, 175 S.W.3d 738, 745 (Tex.Crim.App. 2005). But while jury unanimity is required on the essential elements of an offense, the jury generally is not required to return a unanimous verdict on the specific method of committing a single offense. *Landrian v. State*, 268 S.W.3d 532, 535 (Tex.Crim.App. 2008);

9

*Jefferson v. State*, 189 S.W.3d 305, 311 (Tex.Crim.App. 2006); *Ngo*, 175 S.W.3d at 747 n.32. If the statute which forms the basis of the jury charge lends itself to a disjunctive interpretation, then the jury need not decide unanimously how the defendant committed the crime. *See Schad v. Arizona*, 501 U.S. 624, 649-51, 111 S.Ct. 2491, 2506-07, 115 L.Ed.2d 2555 (1991); *Landrian*, 268 S.W.3d at 535 ("The jury must agree that the defendant committed one specific crime. That does not mean, however, that the jury must unanimously find that the defendant committed that crime in one specific way or even with one specific act.").

We first examine the statute at issue. *See Valdez v. State*, 218 S.W.3d 82, 84 (Tex.Crim.App. 2007)(the question of what the jury must be unanimous about is determined by the legislative intent of the particular statute). As the Court of Criminal Appeals noted in *Huffman v. State*, 267 S.W.3d 902, 905-6 (Tex.Crim.App. 2008), the key examination is the "focus" of the statute:

> We use grammar and we look to other factors bearing on whether different legal theories constitute the 'same' offense or 'different' offenses, but those tools seem useful mainly as an aid to determining focus. The focus or 'gravamen' of the offense seems to be one of the best indicators of the allowable unit of prosecution prescribed by the legislature. If the focus of the offense is the result—that is, the offense is a 'result of conduct' crime—then different types of results are considered to be separate offenses, but different types of conduct are not. On the other hand, if the focus of the offense is the conduct—that is, the offense is a 'nature of conduct' crime—then different types of conduct are considered to be separate offenses. Some offenses, such as capital murder, may contain both result of conduct and nature of conduct elements, and the question becomes which aspect of the statute predominates, or possibly whether both aspects are equally important for determining the separateness of offenses.
>
> There is a third kind of focus that we have not yet discussed, and which has not been addressed in this area of the law: 'circumstances surrounding the conduct.' If 'circumstances surrounding the conduct' is the focus of the offense, then under a focus-based approach to determining separateness of offenses, different types of conduct could establish alternate methods of committing the same offense rather than different offenses, so long as the circumstances surrounding the conduct are the same.

10

*Huffman*, 267 S.W.3d at 907.

The Texas Penal Code provides, in pertinent part, that a violation of a protective order can be established as follows:

> (a) A person commits an offense if, in violation of . . . an order issued under . . . Chapter 83, Family Code, if the temporary ex parte order has been served on the person . . . the person knowingly or intentionally:
>
> (1) commits family violence or an act in furtherance of an offense under Section 22.011, 22.021, or 42.072;
>
> (2) communicates:
>
> (A) directly with a protected individual or a member of the family or household in a threatening or harassing manner;
>
> (B) a threat through any person to a protected individual or a member of the family or household; or
>
> (C) in any manner with the protected individual or a member of the family or household except through the person's attorney or a person appointed by the court, if the violation is of an order described by this subsection and the order prohibits any communication with a protected individual or a member of the family or household;
>
> (3) goes to or near any of the following places as specifically described in the order or condition of bond:
>
> (A) the residence or place of employment or business of a protected individual or a member of the family or household; or
>
> (B) any child care facility, residence, or school where a child protected by the order or condition of bond normally resides or attends . . . .

TEX.PENAL CODE ANN. § 25.07(a)(West Supp. 2012).[4]

The State contends that the "focus" of Section 25.07 is whether a defendant violates a protective order, which constitutes the circumstance that defines the unlawfulness of the defendant's conduct.   The States cites *Small v. State*, 809 S.W.2d 253, 256 (Tex.App.--San

---

[4] The definition section of the jury charge tracks the language of Section 25.07(a)-(b).

Antonio 1990, pet. ref'd)(stating that "the gist" of Section 25.08, the predecessor statute to Section 25.07, was that the defendant intentionally or knowingly acted in violation of a protective order), in support of this interpretation. We conclude that the gravamen of Section 25.07, is the "result" rather than the "nature" of Torres's conduct. *See Avilez v. State*, 333 S.W.3d 661, 670 (Tex.App.--Houston [1st Dist.] 2010, pet. ref'd)("A conviction for violation of a protective order requires proof of a protective order issued under Chapter 85 of the Family Code and proof that the defendant (1) one time, (2) intentionally or knowingly violated that order, (3) by committing family violence or another specified action, by communicating with or threatening a protected person, or by going to or near the home or workplace of a protected person."); *Harvey v. State*, 78 S.W.3d 368, 368-69 (Tex.Crim.App. 2002)("A person commits the offense of violation of protective order if, 'in violation of an order issued under [one of certain provisions of the Family Code or Code of Criminal Procedure], the person knowingly or intentionally commits family violence' or performs another prohibited act.").

We find the instant case analogous to *Patton v. State*, 835 S.W.2d 684 (Tex.App.--Dallas 1992, no pet.). In *Patton*, the defendant was charged with four violations of a protective order, and was found guilty of three of those allegations. *Id.* at 685. One of the counts of the indictment alleged that the defendant "did then and there knowingly and intentionally communicate by telephone with [wife] in a threatening or harassing manner and did go to her business located at [address], Dallas, Texas, to wait for her to leave." *Id.* at 686. The court of appeals noted that there was enough evidence to support the defendant making threats against the protected party, but insufficient evidence to support a finding beyond a reasonable doubt that he went within 500 feet of her place of employment. *Id.* The court of appeals noted:

12

An information that charges commission of an offense by more than one method is sustained by proof of any one of the methods alleged. Evidence of all methods alleged may be offered, and proof of one method is sufficient to sustain a conviction. The State could allege that Husband committed the offense by making threatening or harassing telephone calls to Wife and by going within 500 feet of her place of employment and could obtain a conviction by proving only that Husband made the threatening or harassing calls to Wife at work.

*Id.* at 686-87. [Citations omitted].

The court of appeals determined that because there was sufficient evidence to support a finding that the defendant made threatening phone calls to the victim at her place of employment, the evidence was sufficient to support his conviction of the charge in the indictment. *Id.* at 687.

We find Torres's reliance on *Dolkart* distinguishable from the facts of this case, given that the *Dolkart* court was reviewing different forms of assault, ultimately finding that the different subsections of Texas Penal Code § 22.01(b) and (c) focused on different forms of conduct: one of causing bodily injury, the other of engaging in threatening behavior. *Dolkart*, 197 S.W.3d at 893. The offense complained here is a violation of a protective order. The conduct necessary to support a finding of a violation of a protective order here may be found in the alternative. Torres's argument that because the two acts claimed to have violated the protective order are found in separate sections of the Texas Penal Code, they are therefore intended to punish two separate acts (the act of going to a prohibited place and the act of threatening via communication) is rejected. The underlying purpose of Section 25.07 is violation of a protective order. Jury unanimity as to *how* Torres violated the protective order is not required. Jury unanimity *that* he violated a protective order is what is required.

Because, as he acknowledges, Torres did not object to this portion of the jury charge, we must first determine whether the charge as submitted to the jury was erroneous. If so, we then

13

analyze his complaint under the standard set out in *Almanza v. State*, 686 S.W.2d 157 (Tex.Crim.App. 1984). *Allen v. State*, 253 S.W.3d 260, 264 (Tex.Crim.App. 2008), *citing Olivas v. State*, 202 S.W.3d 137, 143-44 (Tex.Crim.App. 2006)(citing *Almanza v. State*, 686 S.W.2d 157 (Tex.Crim.App. 1985)(op. on reh'g)). Under *Almanza*, unobjected-to jury charge error will not result in reversal of a conviction in the absence of "egregious harm." *Almanza*, 686 S.W.2d at 171. The record must reflect that the defendant suffered "actual harm," not just "theoretical harm," due to the jury instruction error under the *Almanza* standard. *Id.* at 174. In determining whether there was "egregious harm," we consider the record as a whole, including the entire jury charge, contested issues, the weight of probative evidence and the arguments of counsel. *Id.* at 171.

A review of the record as a whole indicates that Torres violated the protective order by going within two hundred yards of Maria's place of business. In fact, Torres testified that he went there after phoning Maria, even though he knew that both the communication itself and going to her place of employment constituted violations of the protective order. This admission alone is sufficient to support the jury's finding that Torres violated the protective order when he "went to or near the place of employment or business of [Maria's] . . . ." We find no actual or egregious harm to Torres as a result of the language of the jury charge.[5] Torres's second issue is overruled.

### Improper jury arguments

The final issue presented by Torres is that the State violated his due process rights by its "continued use of manifestly improper argument" during closing argument. Torres argues that

---

[5] Torres argues that the jury had difficulty in reaching their decision. However, the record does not reflect what sort of difficulties there may have been. Absent evidence identifying such "difficulties," we will not substitute our judgment for that of the jury, particularly in light of the other, uncontroverted evidence of a violation of the protective order, including Torres's own admissions, as noted above.

14

the State's error is a constitutional error, such that this Court must reverse unless we determine beyond a reasonable doubt that the error did not contribute to the conviction or punishment. TEX.R.APP.P. 44.2(a); *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Specifically, Torres directs us to the following exchange:

> The State:  Extraneous offense: the only reason they got brought up is because the defense brought them up.   Rules of evidence forbid us from doing –
>
> Defense Counsel:  Objection Your Honor.   Arguing outside the record.
>
> The Court:  Overruled.
>
> The State:  The Rules of Evidence prevent us from doing anything. We're here to prove to you what happened on April 23rd.   I don't care what happened on April 10th.   I don't care what happened on October 14th, but if the issue is brought up, I don't want to leave you with a false impression.   I wanted you to have the whole story.   That's why I had Brenda testify.   That's why I had Geraldine testify to what they saw, just to give you the entire story.
>        Now he says that those cases were declined because its impossible to prove that I could have brought evidence that showed that he was arrested of [sic] family violence or something like that.   I couldn't have done that even if I wanted to. The Rules of Evidence prevent me from doing so.
>
> Defense Counsel:  Objection Your Honor.   That is a misstatement of the law.   It is outside the argument, and it leaves a false impression in the minds of the jury that he has no access to those things and that they can't be presented.
>
> The Court:  Overruled.

Counsel for Torres then touched on each of the extraneous offenses, including the evidence the State used in attempting to establish each offense.   Counsel returned to these offenses later in his argument, attempting to establish that because no charges were accepted in an earlier allegation of domestic violence, that "two or three weeks later" Maria made up the second instance of an alleged extraneous offense.   As counsel for Torres noted, "[a]nd the State of Texas never ever brought you any information – and that's in their reserve – that he [Torres] was ever arrested,

15

convicted or charged with what we call 'extraneous offenses,' okay?" Obviously, counsel was attacking Maria's credibility.

During its rebuttal, the State also addressed the extraneous offense and credibility issue raised by Torres. Specifically, counsel for the State made the following initial argument:

> So, there's a part in here about extraneous offenses. And Mr. Quijano is right. We've got to prove the extraneous offenses proof beyond a reasonable doubt. And he says 'Let's say you figured out that he's lying and you believe that he really did beat his wife, right, that doesn't mean he lied about everything else.'
>     But when it comes to Maria – when it comes to Maria, 'She made false reports on that day. She made false reports on this day, so she must have made a false report on this third date of April 23rd.' Double standard, don't you think? Kind of interesting.

Following this exchange, counsel for Torres objected as noted above.

Torres contends that the arguments made by the State were equivalent to the prosecutor conveying to the jury that he possessed specialized knowledge about a contested factual matter. He notes that a prosecutor may not use closing argument to get evidence before the jury that is both (1) outside of the record and (2) prejudicial to the accused. Torres contends that "the State's arguments were designed to arouse the passion and prejudices of the jury and as such were highly inappropriate." Torres believes that the State's arguments had a severe prejudicial effect and that, without the "inflaming argument by the State, the jury would not have found beyond a reasonable [sic] that [Torres] was guilty of the offenses charged."

There are four areas which are properly included in jury argument: (1) summation of the evidence presented at trial; (2) reasonable deductions drawn from the evidence; (3) answer to opposing counsel's argument; and (4) a plea for law enforcement. *Guidry v. State*, 9 S.W.3d 133, 154 (Tex.Crim.App. 1999); *Brown v. State*, 270 S.W.3d 564, 570 (Tex.Crim.App. 2008).

Torres asserts that the prosecutor engaged in improper jury argument by alluding to the

16

extraneous offenses and that this argument was outside of the record. However, both Torres and the State presented evidence of other accusations of family violence against Torres.

The record is clear that Torres used the extraneous offense evidence in his closing argument in an attempt to discredit the testimony of Maria. The State's discussion of this evidence was in direct response to the arguments made by Torres. As such, the State's response falls within the allowed scope of permitted jury argument as an answer to opposing counsel's argument. *Brown*, 270 S.W.3d at 570; *Chapman v. State*, 349 S.W.3d 241, 247 (Tex.App.--Eastland 2011, pet. ref'd)(response to opposing counsel's argument relating to extraneous offenses allowed where prosecutor was responding to argument made by defense counsel).

Furthermore, there was no evidence that the extraneous offense evidence referred to by either Torres or the State was somehow outside of the record. At trial, when the evidence was presented by the State, Torres objected on the grounds that the State was attempting to introduce specific acts of misconduct against the parties' children, and not to show that Torres acted in conformity with these acts. Torres continued to argue against the introduction of the evidence, and ultimately the trial court sustained Torres's objection and limited the State to presenting evidence regarding the two incidents which had been raised by Torres in his case-in-chief. There is no evidence that the prosecutor's statements were a misstatement of the law or were outside the record. We do not find that the prosecutor's remarks were inappropriate. Torres's final issue is overruled.

## CONCLUSION

Having overruled each of Torres's issues, the judgment of the trial court is affirmed.

17

December 5, 2012

CHRISTOPHER ANTCLIFF, Justice

Before McClure, C.J., Rivera, J., and Antcliff, JJ.

(Do Not Publish)