In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-19-00008-CR**

_____

**ALBAN CHERRY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 356th District Court**
**Hardin County, Texas**
**Trial Cause No. 24732**

**MEMORANDUM OPINION**

Following a bench trial, Alban Cherry appeals his conviction for Aggravated

Assault with a Deadly Weapon – Family Violence, a second-degree felony.[1] *See*

Tex. Penal Code Ann. § 22.02; Tex. Fam. Code Ann. § 71.003. Cherry challenges

the legal and factual sufficiency of the evidence, arguing the evidence is insufficient

---

[1] Cherry was charged with two separate crimes arising out of the same incident. He was found not guilty under trial cause number 24734.

1

to demonstrate his mental culpability to harm the complainant. For the reasons explained below, we affirm the trial court's judgment.

## Background

Several witnesses testified at trial. R.P., Cherry's nephew, testified that he lives in the trailer home of his grandmother, J.C., who is Cherry's Mother.[2] R.P. stated that on the afternoon of January 22, 2018, he and his grandmother had just returned home. R.P. went to his room and heard Cherry say "tell [R.P.] to get out of his room." R.P. left his bedroom and found Cherry and J.C. arguing. Cherry then left "out the door[,]" and R.P. followed him and stood on the back porch.

R.P. stated that Cherry got into his truck and backed it into the trailer. According to R.P., J.C. was not outside when Cherry first began ramming the trailer. R.P went back inside the residence to retrieve his computer, because he believed it would get damaged by Cherry hitting the trailer with his truck. After R.P. returned outside, he saw Cherry hit J.C. with his truck, and she fell to the ground.

Jeremy Slayter testified that he lives directly across the street from J.C. Slayter stated that on January 22, 2018, he "heard a noise" that sounded like a "truck just revved out[,]" and he went outside to investigate. Slayter stated that although he did

---

[2] We refer to the victim and her family members by their initials to conceal their identity. *See* Tex. Const. art. I, § 30(a)(1) (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process").

not see Cherry doing "donuts" in the yard, Cherry's truck was sitting sideways as if he had been doing "donuts." As he stood on his front porch, Slayter observed Cherry ramming his truck into J.C.'s trailer. J.C. and her daughter, W.C., were outside, and J.C. was "hollering" at Cherry. Cherry then backed his truck up and struck J.C. with his vehicle causing J.C. to be propelled backwards into the trailer. Slayter described the assault as follows:

> [J.C.] had ran from the front door towards the trailer where [Cherry] had already backed into it and when [J.C.] threw her hands up, [Cherry] just clipped her. [J.C.] ran right behind him. [Cherry] clipped [J.C] and she flew backwards and hit the trailer.

According to Slayter, he observed Cherry ram his truck into the home "a couple" of times. Slayter testified that after Cherry hit J.C. with his truck, he did not help J.C. nor did Cherry show any type of concern for his mother's injuries.

W.C.—Cherry's sister, J.C.'s daughter, and R.P.'s mother—testified that she and her children live with J.C. On January 22, 2018, W.C. stated she was asleep in her room when she heard a loud bang. She went into the living room to investigate the noise, and she "fell out the door as my brother rammed the trailer with his truck." W.C. testified that Cherry knew his family was in the trailer. She then observed Cherry hit J.C. with his truck. She stated that the impact caused her mother to fly back toward the trailer. W.C. called 911 and said that Cherry continued to ram the trailer until he "got stuck in the mud." According to W.C., Cherry did not help J.C. after hitting her with his truck.

J.C. testified that on January 22, 2018, Cherry was upset and went outside of her home. She then heard a noise and ran outside. By the time she got outside, Cherry had already hit her home with his truck and caused damage to her vehicle. When she walked down to his truck, she did not believe Cherry saw her because his truck was "loaded with all of his belongings: his blanket, his pillow, [and] his clothes." J.C. stated that after Cherry hit her, she went to the hospital for treatment of her injuries by ambulance. She identified several photographs admitted at trial that showed various injuries to her stomach and hands.

Deputy Tom Lee of the Hardin County Sheriff's Department testified that he investigated the disturbance at J.C.'s. home on January 22, 2018. During his investigation, he spoke to several witnesses, collected evidence, took photographs of the scene which were admitted at trial, and spoke to Cherry.[3] Deputy Lee testified that

> [Cherry] told me that there was some type of public hearing that he wasn't allowed to go to and that his grandmother's dying wish was for his sister not to live in the trailer and his mom was allowing her to live there, so he was going to knock the trailer off the foundation.

---

[3] Cherry's trial counsel objected to any testimony regarding this conversation arguing that Cherry was detained at the time but had not been Mirandized before any investigatory questions. The trial court overruled trial counsel's objection and allowed Deputy Lee to testify about the conversation, stating it was "part of [Deputy Lee's] investigation." Cherry does not raise this issue on appeal.

Deputy Lee then stated that in his experience as a law enforcement officer, vehicles can be used as deadly weapons causing serious bodily injury or death.[4]

Cherry did not testify at trial, and the defense rested without calling any witnesses. The trial court found Cherry guilty of aggravated assault with a deadly weapon, and after a separate bench trial regarding punishment, sentenced Cherry to eight years' incarceration in the Texas Department of Criminal Justice. Cherry timely filed this appeal.

## Standard of Review

When there is a claim of insufficiency of evidence, we review the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the essential elements of the offense beyond a reasonable doubt. *See Brooks v. State*, 323 S.W.3d 893, 899, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307 (1979)) (concluding the *Jackson* standard "is the only standard that a reviewing court should apply" when examining the sufficiency of the evidence); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). In a legal sufficiency review, we examine all evidence in the record, direct and circumstantial, whether it is admissible or inadmissible. *Dewberry v. State*, 4 S.W.3d

---

[4] Additional witnesses testified at trial, a Hardin County investigator testified regarding the crime scene evidence and photographs, and a Hardin County Dispatcher testified regarding the 911 recording admitted at trial, but their testimony is not pertinent to our discussion of the issue presented on appeal.

5

735, 740 (Tex. Crim. App. 1999). The fact finder is the sole judge of the witnesses' credibility and weight to be given to their testimony. *Tate v. State*, 500 S.W.3d 410, 413 (Tex. Crim. App. 2016). Fact finders may draw multiple reasonable inferences so long as each inference is supported by the evidence presented at trial. *Id*. We must defer to the fact finder's determinations of weight and credibility of the witnesses. *See Brooks*, 323 S.W.3d at 899.

## Analysis

In his sole issue on appeal, Cherry challenges the sufficiency of the evidence regarding his culpable mental state for Aggravated Assault with a Deadly Weapon when he injured J.C. Specifically, Cherry argues that "there is no evidence of criminal intent supporting a finding that [he] acted intentionally, knowingly or recklessly[.]"[5] A person commits the offense of Aggravated Assault with a deadly

---

[5] We note that the amended indictment improperly lists the culpable mental states for assault by threat, as "intentionally, knowingly, or recklessly[.]" Section 22.01(a)(2) defines the culpable mental states as "intentionally or knowingly threaten[ing] another with imminent bodily injury, including the person's spouse[.]" Tex. Penal Code Ann. § 22.01(a)(2). This simple assault is elevated to aggravated assault under section 22.02 if the person uses a deadly weapon in the commission of the assault. *See id*. § 22.02(a)(2). As such, on review we focus on if the evidence is legally and factually sufficient to show that Cherry "intentionally" or "knowingly" threatened J.C. with bodily injury. *See Johnson v. State*, 364 S.W.3d 292, 294 (Tex. Crim. App. 2012) (explaining that a statutory variance in the pleading and proof, such as a crime with two alternative methods, one which was pled in the indictment and the other proven at trial, is a failure to prove the statutory language and renders the conviction legally insufficient). Further, an indictment is fundamentally defective and will not support a conviction if a culpable mental state is an element of an offense and the indictment fails to allege that element. *See Ex Parte*

weapon if he intentionally or knowingly threatens bodily injury to another and uses or exhibits a deadly weapon during the commission of the assault. Tex. Penal Code Ann. §§ 22.01(a)(2), 22.02(a)(2). The Texas Penal Code defines intentionally and knowingly in the following manner:

> (a) A person acts *intentionally*, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

> (b) A person acts *knowingly*, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

*Id.* § 6.03(a), (b) (emphasis added).

The Court of Criminal Appeals stated in *Landrian v. State* that assault as defined under section 22.01(a)(2), is a "conduct-oriented" offense as opposed to the "result oriented" offense of causing serious bodily injury under subsection 22.01(a)(1). 268 S.W.3d 532, 536 (Tex. Crim. App. 2008); *see also* Tex. Penal Code Ann. § 22.01(a)(1)–(2).

> The Texas Legislature has defined the crime of assault in Section 22.01 of the Penal Code. Subsection (a) of that provision sets out three separate and distinct assaultive crimes, two of which are relevant to the present discussion:

---

*McWilliams*, 634 S.W.2d 815, 818 (Tex. Crim. App. 1980). But here, an extraneous mental state was included, in addition to those required by the statute.

(a) A person commits an offense if the person:
    (1) intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse;
    (2) intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse[.]

Subsection (1)—"bodily injury" assault— is a result-oriented assaultive offense and normally a Class A misdemeanor. Subsection (2) is conduct-oriented, focusing upon the act of making a threat, regardless of any result that threat might cause. It is normally a Class C misdemeanor.

*Landrian,* 268 S.W.3d at 536 (citations omitted).

"The essential focus of a result of conduct statute is to punish the defendant for causing a specified result[.]" *Dolkart v. State*, 197 S.W.3d 887, 893 (Tex. App.—Dallas 2006, pet. ref'd). In *Dolkart*, the Dallas Court of Appeals explained that in contrast, assault by threat can only be conducted intentionally or knowingly, and its intent is to punish the nature of the specified conduct, threatening others. *Id*. Thus, we focus on the nature of the conduct and not the result of the conduct. *See Brooks v. State*, 604 S.W.3d 239, 245 (Tex. App.—Austin 2020, no pet.) (quoting *Landrian*, 268 S.W.3d at 536). Displaying a deadly weapon within and of itself is a threat of the requisite imminent harm. *Id.* (citations omitted). "The law does not require evidence of threatening language or gestures to prove knowledge of intent." *Mitchell v. State*, 546 S.W.3d 780, 787 (Tex. App.—Houston [1st Dist.) 2018, no pet.) (citation omitted). "By its nature, a culpable mental state must generally be inferred from the circumstances[,]" and this is because "[w]e cannot read an accused's mind, and absent a confession, we must infer his mental state from his 'acts, words and

8

conduct.'" *Nisbett v. State*, 552 S.W.3d 244, 267 (Tex. Crim. App. 2018) (citations omitted). This includes the accused's method of committing the crime. *See Nguyen v. State*, 506 S.W.3d 69, 75–76 (Tex. App.—Texarkana 2016, pet. ref'd) (citation omitted).

Cherry argues that the evidence does not show that he acted intentionally, knowingly or recklessly when he injured J.C. and further contends that "the acts alleged more accurately fit within the definition of negligence rather than recklessness and there is no evidence of an awareness and conscious disregard of a risk." We disagree. The evidence clearly shows that Cherry intentionally and knowingly threatened bodily injury to J.C. while ramming his truck into her home. Because the evidence was sufficient to prove Cherry acted intentionally and knowingly, it is necessarily sufficient to prove the lesser culpable mental state of reckless. *See id.* (explaining that because evidence was sufficient to prove the defendant acted intentionally, it was necessarily sufficient to prove lesser culpable mental states of knowing and reckless); *see also* Tex. Penal Code Ann. § 6.02(e) ("Proof of a higher degree of culpability than that charged constitutes proof of the culpability charged.").

The amended indictment alleged that Cherry

INTENTIONALLY, KNOWINGLY OR RECKLESSLY THREATEN[ED] [J.C.] WITH IMMINENT BODILY INJURY BY STRIKING . . . [J.C.] WITH A MOTOR VEHICLE, AND DID THEN AND THERE USE[D] OR EXHIBIT[ED] A DEADLY WEAPON,

9

. . . A MOTOR VEHICLE, THAT IN IT'S USE AND INTENDED USE WAS CAPABLE OF CAUSING DEATH OR SERIOUS BODILY INJURY, DURING THE COMMISSION OF THE ASSAULT[.]

Cherry admitted to police he intended to knock the home off its foundation. This admission in itself is sufficient to show he intentionally or knowingly threatened J.C. *See Mitchell,* 546 S.W.3d at 787 (explaining that evidence sufficient to show appellant intentionally or knowingly threatened a police officer with assault when he admitted that he intended to threaten the officer or "inflict fear"). Importantly, testimony also established Cherry knew that J.C. and several family members were inside the home when he began to hit the house with his vehicle and still attempted several times to knock the home off its foundation. With a conduct-oriented offense, his conduct of ramming his truck into J.C's home, while fully aware that J.C. was still in her home, is sufficient to demonstrate that Cherry exhibited one of the prerequisite culpable mental states for assault by threat. *See Landrian*, 268 S.W.3d at 536; *Brooks*, 604 S.W.3d at 245; *see also Mills v. State*, 440 S.W.3d 69, 72 (Tex. App.—Waco 2012, pet. ref'd) (explaining that because assault by threat is a conduct oriented assault, we focus the "act of making a threat" and not the result, noting that the appellant's "threat, and therefore the assault" was the act of pushing the victim with his vehicle, and not whether the victim was actually harmed); *Dobbins v. State*, 228 S.W.3d 761, 765 (Tex. App.—Houston [14th Dist.] 2007, pet. dism'd) (explaining that evidence was sufficient to show that appellant intentionally or

10

knowingly threatened the victim because he saw the victim in front of him and still drove his car towards him); *see also Barnes v. State*, No. 14-18-00689-CR, 2020 WL 2026033, at \*4 (Tex. App.—Houston [14th Dist.] Apr. 28, 2020, pet. filed) (describing the defendant's conduct including threatening statements and actions as sufficient to be "interpreted" as a threat). Therefore, viewing the evidence in the light most favorable to the verdict, we conclude that the evidence is legally sufficient to support Cherry's conviction. *See* Tex. Penal Code Ann. §§ 22.01(a)(2), 22.02(a)(2).

Although the indictment contained a culpable mental state not found in the statute, this is not a fatal variance as described by the Court of Criminal Appeals in *Williams v. State*, 270 S.W.3d 140, 144 n.2 (Tex. Crim. App. 2008). In *Williams*, the Court explained that "'[i]n a variance situation, the State has proven the defendant guilty of a crime, but has proven its commission in a manner that varies from the allegations in the charging instrument.'" *Id*. (quoting *Gollihar v. State*, 46 S.W.3d 243, 246 (Tex. Crim. App. 2001)). *Williams* then explained that no fatal variance existed in the record since the allegations in the indictment corresponded with the evidence at trial. *See id*. We are presented with a similar case. Here, although "recklessly" was incorrectly added to the indictment, the mental states of "intentionally" and "knowingly" were also included and evidence was presented at trial sufficient for a fact finder to determine beyond a reasonable doubt as to those statutory culpable mental states. *See id.*; *see also Rabb v. State*, 434 S.W.3d 613, 617

11

(Tex. Crim. App. 2014) (quoting *Cada v. State*, 334 S.W.3d 766, 776 (Tex. Crim. App. 2011)) ("In order to prevail in any prosecution, 'the State must prove the statutory elements that it [chose] to allege, not some other alternative statutory element that it did not allege.'"). We overrule this issue.

### Conclusion

We note that neither party brought to this Court's attention that the trial court's judgment reflects an incorrect recitation of Cherry's plea to the trial court. The judgment reflects that Cherry pled "GUILTY" to the offense. That is incorrect. Cherry pled "Not guilty." As such, we modify the judgment of the trial court to reflect the plea designation by Cherry. *See* Tex. R. App. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27 (Tex. Crim. App. 1993) (explaining the Court's authority to reform the trial court's judgment to correct clerical errors). The trial court's judgment is modified to reflect that Cherry pled "Not guilty" to the offense. Accordingly, we overrule Cherry's sole issue and affirm the trial court's judgment as modified.

AFFIRMED AS MODIFIED.

_____
CHARLES KREGER
Justice

Submitted on April 30, 2020
Opinion Delivered September 30, 2020
Do Not Publish

Before McKeithen, C.J., Kreger, and Horton, JJ.

12